## JULY TERM, 1922

[No. 2523]

## THE WILLIAM J. BURNS INTERNATIONAL DETECTIVE AGENCY, INCORPORATED, APPELLANT, v. GEORGE DOYLE, ED. MILLARD, AND E. C. HAIR, RESPONDENTS.

[208 Pac. 427]

1. GRAND JURY—STATUTE AUTHORIZING CHALLENGE TO JURORS WAS INTENDED TO SECURE UNBIASED INVESTIGATION.

   Rev. Laws, 7005, permitting a challenge to an individual grand juror for personal bias, and section 7009, providing that, if such challenge is allowed, the grand juror cannot be present during or take part in the consideration of a charge against the individual, were intended to insure persons under investigation the consideration of their case so far as possible by those who are in no way biased, and definitely establishes that as the public policy of the state.

2. GRAND JURY—OBJECTION MUST BE MADE AT TIME OF IMPANELING IF FACTS ARE KNOWN.

   Objections to qualifications of a grand juror under Rev. Laws, 7005, must be interposed at the time the grand juror is impaneled, though one indicted by a grand jury, who has not had a previous opportunity to do so, or did not learn of the fact till it is too late, may move to set aside the indictment upon a ground for which a challenge might have been interposed.

3. CONTRACTS — TENDENCY TO SITUATION CONTRARY TO PUBLIC POLICY INVALIDATES.

   A contract which tends to produce a situation contrary to public policy is void whether or not in a particular case it has produced that result.

4. GRAND JURY — EMPLOYMENT BY MEMBERS OF DETECTIVES TO INVESTIGATE PARTICULAR CRIMES IS CONTRARY TO PUBLIC POLICY.

A contract whereby members of the grand jury employed a detective agency to produce evidence regarding particular crimes which were to be investigated by the grand jury is contrary to public policy, since the grand jury employing the detectives are thereby biased or prejudiced in favor of the evidence procured by their employees.

APPEAL from Ninth Judicial District Court, White Pine County; *E. J. L. Taber,* Judge.

Action by The William J. Burns International Detective Agency, Incorporated, against George Doyle and others. Judgment for defendants when plaintiff declined to amend after demurrer to the complaint was sustained, and plaintiff appeals. **Affirmed.**

*G. F. Boreman,* for Appellant:

Admitting the expenditure of money or the incurrence of the obligation, there may or may not exist in the mind of the juror a state of bias in reference to the case under consideration by him; or it may exist in the mind of one and not in that of another; or it might be of such slight a nature as should properly be disregarded. A person shall not be disqualified as a grand juror by reason of such opinion, if it satisfactorily appear to the court, upon his declaration under oath, or otherwise, that he will, notwithstanding such opinion, act impartially and fairly. Rev. Laws, 7005. Grand jurors are under solemn obligation, imposed by their oath, diligently to inquire into all infractions of the criminal law which may be given to them in the charge or may come to the knowledge of any of the members, or of which they can obtain legal evidence. Rev. Laws, 7012, 7020, 7027, 7028.

The contract as pleaded is complete and independent, and if its validity be upheld it discloses under the allegations a clear and indisputable liability upon the part of the respondents. They should not be permitted to hide behind the legal curtain of "public policy" in order to

escape liability for their just obligation. The contract should not be lightly set aside, unless for fraud or upon considerations of public policy of the gravest nature. "Public policy is a very unruly horse, and when you once get astride it you never know where it will carry you." Richardson v. Mellish, 2 Bingham, 229. "If there is one thing more than another which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that contracts when entered into freely and voluntarily shall be held good and shall be enforced by courts of justice." Printing Co. v. Sampson, 19 Eq. Cas. L. R. 462; Diamond Match Co. v. Roeber, 106 N. Y. 473.

It is not contrary to public policy for grand juries or prosecuting officers to avail themselves of the services of detectives who are not officers of the law, or of the evidence thereby secured, in the detection and prosecution of offenders. At the present day hardly a criminal case of note is brought to trial without the assistance of such operatives, and many states, by statutory enactment, permit their employment, even by the district attorney who files the information. Thiel Detective Co. v. Tuolumne County, 173 Pac. 1120.

*Chandler & Quayle,* for Respondents:

The alleged agreement is contrary to public policy, and is therefore void. It is a part of the public policy of this state, as expressed in its statutes, that a grand juror shall be impartial. Rev. Laws, 7005; Parus v. District Court, 42 Nev. 229; State v. Williams, 35 Nev. 276. The statute requires the same state of mind on the part of a grand juror as of a trial juror. Rev. Laws, 7009, 7150. A grand juror is required to make oath that he "will present no persons through malice, hatred, or ill will." Rev. Laws, 7012, 7013. The right of an accused person to challenge an individual grand juror is a substantial right. State v. Bachman, 41 Nev. 197.

"It is the duty of the judiciary to refuse to sustain that which is against the public policy of the state, when such public policy is manifested by the legislation or fundamental law of the state." 6 R. C. L. 709; People v. Chicago Co., 130 Ill. 268.

A grand jury has no authority to employ detectives, even when the regularly constituted peace officers fail to cooperate with the grand jury. Aside from the question of public policy, the grand jury itself has no power to make such a contract or to bind the county thereon. Woody v. Peairs, 170 Pac. 660. The complaint does not allege any express contract with the grand jury, and such contract cannot be implied. Burns v. Holt, 164 N. W. 590. The complaint fails to allege an obligation binding on the county, or with an authorized county official, and shows no approval of the claim by the board of county commissioners. Rev. Laws, 1508–1510, 1523–1525.

By the Court, COLEMAN, J.:

This action was instituted to recover an amount alleged to be due and owing the plaintiff from the defendants under a contract claimed to have been entered into for the performance of certain services in the procuring of evidence for submission to the grand jury of White Pine County, of which the defendants were members. The complaint alleges, among other things:

"That the grand jury was desirous of procuring the aid and services of plaintiff * * * for the purpose of assisting said grand jury in * * * obtaining evidence of certain alleged criminal offenses * * * and requested plaintiff to furnish its aid * * * to said grand jury for the purpose of making investigation of certain alleged criminal matters and offenses alleged to have occurred within said county, and of aiding said grand jury in obtaining proofs or evidence in respect thereof."

To the complaint a general demurrer was filed, and, after consideration thereof, the trial court sustained the same. Plaintiff declined to amend, judgment was rendered in favor of the defendants, and plaintiff has appealed.

Two points are presented in support of the contention that the complaint does not state a cause of action: First, that the contract pleaded in the complaint is against public policy, and hence void. We need not consider the other contention.

1. Is the contract pleaded against public policy? Section 7005 of the Revised Laws of 1912 provides that a challenge may be interposed to an individual grand juror where a state of mind exists on his part in reference to the case which will prevent his acting impartially and without prejudice to the substantial rights of a party. By section 7009 it is provided that, if a challenge to an individual grand juror is allowed he cannot be present during, or take part in, the consideration of a charge against an individual. The rights thus secured to one under investigation are substantial in their nature. State v. Bachman, 41 Nev. 197, 168 Pac. 733. If we can accurately divine the purpose of these provisions of our statute, it is to assure persons under investigation the consideration of their case, as far as possible, by those who are in no way biased. Such is the public policy of the state, as definitely established by statute.

2. Counsel for appellant has presented the case very strongly, but we think the sounder view is opposed to his contention. It is urged that bias is a state of mind to be shown and made to appear as any other fact. In this connection it is also urged that, even where a juror is biased, if it appears to the court that notwithstanding such bias the juror can act impartially and fairly, the court will not disqualify him. Rev. Laws, 7005. Basing the contention upon the foregoing assertions, it is insisted that, if an indictment should be returned, based

upon evidence unearthed by a detective who pursued his investigation pursuant to such a contract as the one pleaded, it must be set aside, if the position of respondents is sound, because of the means employed in ferreting out the facts. We think counsel's premise is an erroneous one. It was long ago settled that our statute fixes the disqualifications of a grand juror (State v. Millain, 3 Nev. 409, 424) ; it has also been decided that objections to the qualifications of a grand juror can be made only at the time and in the manner contemplated by statute (McComb v. District Court, 36 Nev. 417, 136 Pac. 563) ; and our statute clearly contemplates that a person held to answer to the grand jury must interpose his challenge to a grand juror at the time it is impaneled.

It is true that one indicted by a grand jury, who has not had previous opportunity to do so, may move to set aside the indictment upon the ground for which a challenge might have been interposed. Conceding the correctness of the contention that bias is a state of mind to be shown, and that the court must determine if such bias exists as to disqualify a grand juror, we are still of the opinion that the contention of counsel cannot be sustained. One who is indicted by a grand jury composed of persons who have financed the building up of a case against him, and who are biased, might not learn of the facts until it is too late to raise the question of bias in any manner or at any time.

3.　We think, since it is the public policy of this state, as declared by statute, that one whose conduct is being investigated by a grand jury is entitled to have the investigation made by unbiased grand jurors, the sole question for us to determine is the force and effect of the contract pleaded. In this connection we may well direct attention to the thought expressed in King v. Randall, 44 Nev. 118, 190 Pac. 979, 13 L. R. A. 730, to the effect that a contract which tends to produce a situation contrary to public policy, whether or not in a particular case it produces that result, is void.

4. Would such a contract as that pleaded tend to defeat the general purpose of our statute to afford every person whose conduct is being inquired into an inquisitorial body free from bias and prejudice? As will appear by reference to the quotation from the complaint, it is charged that the plaintiff was employed to investigate "certain alleged criminal offenses. * * *" The allegation negatives the idea that plaintiff was employed to investigate the commission of crimes generally, but that its activities were limited to particular offenses. The inference deducible from this language is that it was especially desirable to fix the liability for certain offenses. That purpose was so earnestly desired that the defendants were willing to obligate themselves for a large outlay. Is it possible for frail human nature to lend its support to the ferreting out a crime without being influenced in reaching a conclusion as to the guilt or innocence of the party? We think not. Would any one be so audacious as to say that a detective who has been active in investigating an alleged crime could be an impartial grand or petit juror? The inquiry suggests the answer. One who furnishes the money to induce the activity of a detective in such an inquiry is but slightly, if any, less liable to be prejudiced. In fact, the detective is working for the reward, and is paid for his services, regardless of results, whereas the one who puts up the money to induce the activity of the detective is in a position to use his influence to get the results he hopes for. His only reward is in finding a victim. Is he likely to be impartial toward the one who is the fruit of his own activity? A knowledge of human nature answers, "No." The experiences of the ages answer, "No." The words of St. Luke, "Where your treasure is, there will your heart be also," state a truism. An agreement on the part of grand jurors to finance an investigation of a particular offense inexorably prejudices them as impartial and unbiased members of the grand jury. Such a contract not only tends to create prejudice, but, unless the persons so

agreeing are superhuman, it is safe to say that it in fact has that effect.

In the case of Wm. J. Burns I. D. Agency v. Holt, 138 Minn. 165, 164 N. W. 590, the point here under consideration was urged, and, though not squarely decided, the intimation of the court is strongly in accord with the view we have taken. Said the court:

"We shall not now stop to inquire and determine whether a contract made by a grand juror or grand jury to finance an investigation of crimes through detective agencies is void as against public policy. It is enough to suggest that for grand jurors to personally finance criminal investigations is so at variance with the evident purpose of their work, under the theory of our criminal procedure and the practice of modern jurisprudence, that no contract so to do should be implied from the fact that reports were received and made use of by the grand jury, or from the fact that its foreman requested the same or any other service from outsiders. The foreman has no express or implied authority to incur expense for which the jury or the individual members will be liable. Moreover, the finding of an indictment calls for the judgment of fair-minded, unprejudiced men. It is against the general consensus of opinion that ordinary men can act fairly and impartially when their purse has been placed on one side of the scale."

Holding the views expressed, the judgment must be affirmed.

It is so ordered.

DUCKER, J.: I concur.

SANDERS, C. J., concurring:

This is an appeal from a judgment dismissing a complaint upon demurrer. According to its averments, the plaintiff, The William J. Burns International Detective Agency, is a New York corporation, organized and engaged in the business of doing general detective work

for hire. The defendants, George Doyle, Ed. Millard, and E. C. Hair, were, at the time stated in the complaint, members of a regularly impaneled grand jury in the district court for White Pine County, the defendant Doyle being its foreman. On or about the 23d day of March, 1917, said grand jury, through its foreman, requested plaintiff to furnish its aid, assistance, and services to said grand jury for the purpose of making investigations of certain alleged criminal matters and offenses which had occurred within its jurisdiction, and of assisting it in obtaining proofs or evidence in respect thereof, and of making reports to said grand jury of its investigations with respect thereto.

It is alleged that, pursuant to said grand jury's request, and in consideration that plaintiff would furnish its aid, assistance, and services, as aforesaid, to said jury, the defendants, on the date mentioned, promised, agreed, and guaranteed that plaintiff would be paid and should receive for its aid and services the sum of $9 per day for each detective, agent, and employee of plaintiff who should be engaged in doing detective work in respect to the criminal offenses under consideration and investigation by said grand jury, and likewise the expenses of each operative so employed from the time of leaving the office of plaintiff until his return.

It is alleged that, pursuant to the request of said grand jury and the defendants, and in consideration of the latter's said promise and guaranty, the plaintiff furnished and rendered its aid and services in and about such investigations whenever requested by said grand jury, and that it did aid and assist that body in obtaining proof and evidence in respect to the criminal matters then under its investigations, and furnished said grand jury with complete reports of all such investigations made by plaintiff. The total amount alleged to be due and owing for its aid and services is $2,383.90, for which plaintiff demands judgment against Doyle, Millard, and Hair.

The meaning I attribute to the cause of action is that plaintiff was employed by said grand jury, through its foreman, for the purposes stated. The right of plaintiff to recover, if it exists, is, in my opinion, predicated solely upon the validity of plaintiff's employment. If, therefore, the grand jury of White Pine County is not in law authorized to employ plaintiff to aid and assist it in its investigations of criminal offenses, or to hire a person to procure evidence to be used before it, it would seem to follow that defendants' promise or guaranty of a specified amount per day under and by virtue of its employment is without consideration. So the question for determination is not whether the defendants' promise or guaranty is in contravention of public policy, but whether a grand jury, duly impaneled, is authorized by the general law or statute to employ a detective agency to aid and assist in its investigations of certain criminal offenses, or to furnish evidence with respect thereto to be used in making a presentment or indictment.

The question is new in this jurisdiction, and, after most diligent research, I have been unable to find in the decisions of other courts any precedent for such a contract of employment by a grand jury, for the reason, I assume, that the method of procedure adopted by the grand jury, in the exercise of its inquisitorial powers, is most extraordinary and unusual.

It is deemed proper to state that an impression widely prevails that grand juries, in the exercise of their inquisitorial powers, may assume the role of prosecutors in their commendable earnestness and zeal to bring to light for examination, trial, and punishment violators of public authority, our constitution and laws. But such is not the law. Grand juries are not prosecutors. It is pointed out in a leading text on criminal procedure that, when liberty is threatened by excess of authority, then a grand jury, irresponsible as it is, and springing from the body of the people, is an important safeguard of liberty. If, on the other hand, public

order and the settled institutions of the land are in danger from momentary popular excitement, then a grand jury, irresponsible and secret, partaking, without check, of the popular impulse, may, through its inquisitorial powers, become an engine of oppression and of great mischief to liberty as well as to order. In the time of James II the grand jury was called into existence to serve as a barrier against oppressive state prosecutions. Under our government the only valid basis upon which the institution of grand juries rests is that they are an independent and impartial tribunal between the prosecution and the accused, and it is the duty of the courts to refuse to tolerate any practice which conflicts with this independence and impartiality. 2 Wharton's Crim. Prac. (10th ed., Kerr) sec. 1295.

"Grand juries," it has been said, "are high public functionaries, standing between accuser and accused. They are the great security to the citizens against vindictive prosecution, either by government or political partisans, or by private enemies. In their independent action the persecuted have found the most fearless protectors; and in the record of their doings are to be discovered the noblest stands against the oppression of power, the virulence of malice and the intemperance of prejudice. These elevated functions do not comport with the position of receiving individual accusations from any source, not preferred before them by the responsible public authorities, and not resting in their own cognizance sufficient to authorize presentment. Nor should courts give unadvisedly aid or countenance to any such innovations."

These high ideals are condensed in a solemn obligation to be administered to the foreman and taken by all the members of the grand jury before entering upon the discharge of their duties. It is true that in the discharge of their oaths they are required to make diligent inquiry into all offenses committed and triable within their jurisdiction, of which they have and can obtain legal evidence. But I am of the opinion that, in

the exercise of their inquisitorial powers, they are not required, neither are they empowered, to employ third parties to aid, assist, and participate in the prosecution of their trust, outside of those public officers upon whom the law imposes the duty. It is true they must inquire of all offenses, but not by procuring by stealth and chicanery witnesses to become public informers, but by sending for persons in the manner provided by law, who might, in the opinion of the grand jury, be most likely to possess evidence relative to the matters under investigation.

Furthermore, to countenance such a method as here employed of making presentments or. indictments "would introduce a flood of evils, disastrous to the purity of the administration of criminal justice and subversive of all public confidence in that body." It would tend to destroy the independence and impartiality of the grand jury and increase the danger it was intended to avert. I act more in conformity with a wise and equal administration of the criminal law by refusing to tolerate any innovation or practice that would bring the grand jury system into contempt.

I concur in the affirmance of the judgment.