## Kenton & Campbell Benevolent Burial Association v. Quinn et al.

(Decided May 27, 1932.)

GALVIN & TRACY for appellant.

NIEBERDING & NIEBERDING for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This suit was brought under the Declaratory Judgment Act (Civil Code of Practice, secs. 639a-1 to 639a-12) to test the validity of an act relating to burial associations passed by the General Assembly of Kentucky at its 1932 session, and, in the event the act is declared to be valid, to obtain a declaration of the rights of the parties, who are the Kenton & Campbell Benevolent Burial Association on the one side, and its policyholders, represented by the appellees, on the other.

The act in question carried no emergency clause, and, if valid, will become effective 90 days after the adjournment of the Legislature. It is amendatory of chapter 143 of the Acts of the General Assembly of 1906 as amended by chapter 72 of the Acts of 1908. The 1906 act, as amended by the act of 1908, is now carried in the Kentucky Statutes as sections 199a-1 to 199a-7, inclusive. Chapter 143 of the Acts of 1906 was entitled, ''An Act to regulate burial associations, corporations and compa-

nies doing business in the State of Kentucky.'' and section 1 of the act provided that every corporation, association, company, or individual known as burial corporations, associations, or companies engaged in this state in the business of insuring or guaranteeing burial or burial expenses of persons holding certificates or policies therein should, before commencing such business or further continuing therein, execute articles of incorporation and file same in the office of the insurance commissioner of this state. Section 2 provided that such corporation should deposit with the state treasurer double the amount of the maximum certificates issued by them, such funds to be invested in securities in which insurance companies are allowed by law to invest their capital. Section 3 provided that such corporations desiring to do business in this state should file with the insurance commissioner a power of attorney designating the insurance commissioner as the proper person upon whom process might be served; and section 4 provided for the payment of an annual license tax of $100 to the state of Kentucky. Section 5 required such corporations to file annual reports with the insurance commissioner, and section 6 fixed penalties for noncompliance with the provisions of the act. Section 7 provided that a correct copy of the application of the insured and the constitution, by-laws, and other rules of the corporation, if referred to in the policy or certificate, should be attached to the policy or certificate.

Chapter 72 of the Acts of 1908 amended only section 2 of the act of 1906, and the slight changes made by that amendment are not material to this controversy.

The only substantial changes made in the existing law by the act of 1932 are the following: (1) It prohibits the payment of benefits by a burial association in merchandise or services, and provides that all benefits must be paid in money; (2) it provides that each burial association shall deposit with the state treasurer securities to the amount of not less than $100,000 to be held by him for the benefit of the policyholders of the association making such deposit; (3) it exempts from its provisions fraternal societies, fraternal benefit societies, assessment, life and accident insurance companies, associations existing or operating under or by virtue of any statute of this state, and any society which pays sick or disability benefits and which limits its membership to a particular class

of persons or to the employees of a designated person, firm, or corporation.

The appellant is a corporation organized under the laws of this state in 1911, and since its organization has conformed in all respects with the provisions of the law relating to burial associations. The corporation has no capital stock, and pays no salaries or dividends. The only expenses paid by it are wages to employees who solicit memberships and collect dues. Its activities are confined to Kenton and Campbell counties, and it has more than 40,000 members whose dues are paid weekly and which range from 5 cents to 30 cents, depending upon the age of the member. The certificate heretofore issued to its members provides that the association shall furnish specifically described merchandise and services for the burial of the insured member, and it fixes a valuation of $150 on the merchandise and services to be furnished by the association for the burial of a person more than five years of age, $75 for the burial of a child six months to five years of age, and $50 for the burial of a child under six months of age.

In its petition the plaintiff association set out the certificate which it proposes to issue to members obtained after the act of 1932 becomes effective, in the event that act is held to be valid.

The questions presented on this appeal are: (1) Does the act of 1932 violate any of the provisions of the State or Federal Constitutions? (2) Are the contracts at present oustanding affected by the act of 1932? (3) Is the contract which the association proposes to make with new members, obtained subsequent to the date the 1932 act becomes effective, valid? (4) Is the association required to reincorporate in order to operate pursuant to the provisions of the act?

It is argued that the act impairs the obligations of existing contracts, constitutes offensive class legislation, and denies to the association and its members the equal protection of the law. In section 2 of the act it is provided that all benefits must be paid in money. The existing contracts between the association and its members provide for the payment of the benefits in merchandise and services. If the Legislature intended the act to apply to existing contracts, it clearly would be invalid as impairing the obligations of such contracts, but we are convinced that the Legislature did not intend that

the act should change or affect existing contracts. If a statute is susceptible of two constructions, one of which will render it unconstitutional and the other valid, it will be given the latter construction, since it is the established rule in this and all other jurisdictions, when the constitutionality of a statute is questioned, to adopt such construction as will make the statute constitutional if its language will permit. Campbell v. Commonwealth, 229 Ky. 264, 17 S. W. (2d) 227, 63 A. L. R. 932; Gibson v. Commonwealth, 209 Ky. 101, 272 S. W. 43; Associated Producers' Co. v. Board of Supervisors of Estill County, 202 Ky. 538, 260 S. W. 335; Lakes v. Goodloe, 195 Ky. 240, 242 S. W. 632; Grenada County Supervisors v. Brown, 112 U. S. 261, 5 S. Ct. 125, 28 L. Ed. 704; Linder v. U. S., 268 U. S. 5, 45 S. Ct. 446, 69 L. Ed. 819, 39 A. L. R. 229. The Supreme Court of Illinois in an early case thus stated the rule:

"Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give to it the force of law, such construction will be adopted by the courts. Therefore, acts of the legislature, in terms retrospective, and which, literally interpreted, would invalidate and destroy vested rights, are upheld by giving them prospective operation only; for, applied to and operating upon future acts and transactions only, they are rules of property under and subject to which the citizen acquires property rights, and are obnoxious to no constitutional limitation; but as retroactive laws, they reach to and destroy existing rights, through force of the legislative will, without a hearing or judgment of law." Newland v. Marsh, 19 Ill. 376, 384.

The section of the act which exempts from its provisions fraternal societies and other societies, companies, and associations is not offensive to the state or Federal Contitution as creating an unreasonable classification. The act defines the term "Burial Association" as all persons, individuals, firms, partnerships, corporations, and organizations of every kind which, in the consideration of the payment of dues, fees, assessments, or premiums, shall issue any kind of agreement, policy, contract, assurance, or guaranty, or have in effect any by-law under which the insured is to be provided in case of death with a funeral or funeral expenses. It is a matter of common

knowledge that the members of such associations are generally poor and frequently illiterate, and the chief purpose of the legislation is to safeguard their rights. We think that the classification is based on reasonable distinctions, and that the act is not violative of any constitutional provision.

The contract which the appellant proposes to make with members obtained subsequent to the effective date of the act provides that it is the purpose and object of the association to provide means for a respectable burial of its members, and that it will not in any case furnish the merchandise or services required for such purpose, but will pay in money the amount specified in the policy. It guarantees to the member that the money will not be used for any other purpose, and, with this object in view, it selects and places under bond nine undertakers who are required to furnish the merchandise and services necessary for the burial for the price stated, and it authorizes the member, or, after his death, the members of his family or those having charge of his remains, to select any one of the nine bonded undertakers to furnish the specified merchandise and services, and, when the service is rendered, the association agrees to pay in money to the undertaker rendering the service the face value of the policy.

The only respect in which it could be argued that this contract fails to conform to the requirements of the act is the provision therein limiting the choice of a funeral director to the nine persons or firms designated in the certificate issued to the member. In prohibiting burial associations from paying funeral benefits in merchandise and services and requiring the payments of benefits to be made in money, the Legislature intended to protect the members of such associations from fraud and imposition on the part of the insurer and to enable them to obtain the full consideration provided for in their respective contracts. The purpose of the member in the first instance in entering into the contract is to guarantee that he will receive a respectable burial. The proposed contract safeguards that purpose and prevents the proceeds of the policy from being diverted to another use. The member, or, after his death, those nearest in relationship to him, or having charge of his remains, may select one of the nine undertakers named in the certificate to furnish the specified merchandise and service. What

effect a more limited field of choice would have as to the validity of the contract need not be determined, since we are of the opinion that the proposed contract affords the member, or, after his death, the one named therein as his representative, a field of choice sufficiently broad to render it unobjectionable under the act. The act provides that the payments made by burial associations shall be used as funeral or burial benefits, and the proposed contract guarantees to the insured that the proceeds of his policy will be used for the purpose intended by him, and is in accordance with the provisions of the act.

Section 3 of the act provides that every burial association as therein described shall, before commencing such business or further continuing therein, execute articles of incorporation and file same in the office of the insurance commissioner of this state. It further provides that the articles of incorporation shall be examined by the Attorney General, and, if found by him to be conformable to the requirements of the law, that they be recorded in a book to be kept for that purpose by the insurance commissioner. This section is a literal copy of a portion of section 1 of the act of 1906 (Ky. Stats., sec. 199a-1). When the first act regulating burial associations was passed, there were individuals and unincorporated associations carrying on the business sought to be regulated and it was deemed proper to require all burial associations to incorporate. Since the act of 1906 became effective, it has been unlawful for any individual or association to engage in this state in the business of insuring or guaranteeing burial expenses of persons holding certificates or policies issued by such individual or association without incorporating pursuant to that act.

In passing the act here in question, there was clearly no reason for requiring existing burial associations, which necessarily are corporations, to execute articles of incorporation before further continuing in business. The inclusion in the act of the words ''or further continuing therein'' was clearly an inadvertence. It was not the purpose of the Legislature to require existing corporations to go through the foolish and needless procedure of executing new articles of incorporation.

Summarized, our views are as follows: (1) The act of 1932 relating to burial associations is not unconstitutional; (2) the existing contracts between appellant and its members are not affected by the act; (3) the contract

which appellant proposes to make with members obtained subsequent to the date the act of 1932 becomes effective is in accordance with the provisions of the act and valid; (4) appellant is not required to execute new articles of incorporation in order to operate pursuant to the provisions of the act.

The judgment of the lower court being in accord with the views herein expressed, it is affirmed.