## Jackson v. Sullivan et al.

Feb. 3, 1939.

WOODWARD, DAWSON & HOBSON for appellant.
DODD & DODD for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellees, Sullivan, Hays, Pfeiffer, Garst and Markham, are general contractors in Jefferson County, members of a contractors' association and constitute the "Divisional Committee of the Contractors' Division of the Construction Industry," acting as such under appointment by the Association of Contractors.

This Association adopted a "Code of Fair Competition" consisting of an agreement signed by 140 or more contractors, which agreement, together with the Code adopted under the N. R. A., as promulgated by the President of the United States, constitutes the rules and regulations of the Association. The Association was formed for the purpose as stated in the contract and code of rendering mutual service to the membership and to prevent unfair competition in the contracting business. The appellant is also a member of this Association.

The question presented for decision in the case at bar arises under the following provision contained in the Association agreement:

"No party to this agreement will give, offer, receive, use or consider any bid, proposal or quotation in connection with competitive bidding or building work to be executed in Jefferson County, Kentucky, unless such bid, proposal or quotation * * * is made in competition only with a member or members of the Industry who have agreed in writing to abide and conform and are abiding and conforming with the condition of this agreement."

The appellant made a bid on a construction project in Jefferson County in competition with contractors who were not members of this Contractors' Association in violation of the above quoted provision of the agreement, which bid was accepted by the owner, and pursuant to the bid, the appellant erected the building, which had a value in excess of $10,000. In accordance with the provisions of the agreement, the appellees, as the Divisional Code Committee, assessed a fine of $500.00 against appellant. The maximum amount of the fine which could have been assessed according to the agreement was 25 per cent of the amount of the contract, or $2,500. The appellant refused to pay this fine and this action was instituted against him for the recovery thereof. The petition set out all these facts. Appellant demurred to the petition and his demurrer was overruled, and, appellant declining to plead further, judgment was entered against him for the $500. This appeal is prosecuted from that judgment.

It will be seen, therefore, that the single narrow question is presented as to whether or not the provision of the agreement above quoted is a contract or agreement in unreasonable restraint of trade and therefore void.

It is conceded that we have in Kentucky no anti-trust or anti-monopoly laws and no statute of any kind prohibiting an agreement in restraint of trade or an agreement restricting or destroying competition. It is therefore evident that this question must be decided under the principles of the common law.

There can be little question that at common law contracts, agreements and combinations in unreasonable restraint of trade or having a tendency to destroy or restrict competition are void on the ground that they are contrary to public policy. 13 C. J. 467; Hooker v.

Vandewater, 4 Denio, N. Y., 349, 47 Am. Dec. 258; Craft v. McConoughy, 79 Ill. 346, 22 Am. Rep. 171; More v. Bennett, 140 Ill. 69, 29 N. E. 888, 15 L. R. A. 361, 33 Am. St. Rep. 216; West Virginia Transportation Company v. Ohio River Pipe Line Company, 22 W. Va. 600, 46 Am. Rep. 527; Bailey v. Master Plumbers Association of Memphis, 103 Tenn. 99, 52 S. W. 853, 46 L. R. A. 561. This last case was a well reasoned case and many authorities are collated and reviewed therein, establishing that such agreements are clearly obnoxious to the common law.

The appellant cites and lays much stress on the case of Kentucky Association of Highway Contractors v. Williams, 213 Ky. 167, 280 S. W. 937, 45 A. L. R. 544. In that case the by-laws of the Association provided that the annual dues should be $50 and that the members should pay into the Association one-fourth of one per cent of the contract price on all federal, state and county highway work performed by members of the Association. This agreement was held to be void as being against public policy because the inevitable effect of the agreement was to cause the contractor to add such percentage to the amount of his bid. This case does not bear any great weight on the question of unreasonable restraint of trade or restriction of competition, but is applicable as illustrating the attitude of this court towards agreements and combinations having a tendency to be hurtful to the public interest.

The appellees rely principally on the cases of Louisville Board of Fire Underwriters, etc., v. Johnson, 133 Ky. 797, 119 S. W. 153, 24 L. R. A., N. S., 153, and Booker & Kinnaird v. Louisville Board of Fire Underwriters, 188 Ky. 771, 224 S. W. 451, 21 A. L. R. 531. We do not think, however, that those cases are controlling on the question here presented either. In the Johnson Case, the agreement was that no member of the Louisville Board of Fire Underwriters should take the agency of a company which already had an existing agency in the city. This provision was held to be valid and not to be an agreement in unreasonable restraint of trade. However, the real competition in such cases is between companies and not agents and this agreement had no tendency to restrict competition between insurance companies; it was pointed out by the court that there was no purpose shown to fix, regulate or control insurance

rates. In the Booker & Kinnaird Case an insurance company had been for years represented by Booker and Kinnaird. This company appointed one Botts, who was not a member of the Board, as its agent also. The Board required Booker and Kinnaird to have the insurance company cancel the agreement of Botts or themselves surrender the agency for this company. The Board had the rule that when a company was represented by a member of the Board, such member must cease to represent a company if it designated another agent who was not a member. This agreement was upheld as being a reasonable restraint, but it is apparent that the court in that case had in mind that the public was not injuriously affected by this agreement. It will be observed that the members of the Board of Fire Underwriters made no agreement not to bid for insurance when non-members were attempting to obtain such insurance, and it was also pointed out in that case that the rights of the insuring public were not in any manner affected by the enforcement of the agreement as the Board had no power whatever to fix or regulate insurance rates, this power being lodged exclusively in the State Insurance Department. This agreement had no tendency to prevent an insurance company from competing for any insurance, but only prevented a company from being represented both by a member and a non-member of the Board.

A case more nearly in point is Reeves v. Decorah Farmers' Cooperative Society, 160 Iowa 194, 140 N. W. 844, 44 L. R. A., N. S., 1104, in which a local association was formed to buy, ship and sell hogs for its members with the provision that if any member sold to anyone other than the Association, he should pay five cents a cwt. to the Association on hogs sold to outsiders. This was held to be an agreement in unreasonable restraint of trade, the court saying that such fine or penalty made the society an illegal one. Another case very similar to the case just discussed is Timothy Burns v. Wray Farmers' Grain Company, 65 Colo. 425, 176 P. 487, 11 A. L. R. 1179, in which was involved an agreement by which members of the Association were assessed a penalty of 1 cent per bushel for selling grain to anyone in Wray who was a non-member of the Association but providing that grain might be sold without penalty to local feeders and to persons in the immediate locality desiring grain for feed purposes. This agreement was

held to be void as being in unreasonable restraint of trade and as depriving the public of the advantages derived from free competition.

There is no question but that the agreement in question in this case has a tendency seriously to restrict competition. By its provisions no member of the Association may bid on a contract where a non-member of the Association puts in a bid. No elaboration or argument is needed to establish the fact that such an agreement is a restraint of trade and destructive of competition. It is alleged in the petition that the members of the Association are capable of handling all contract business in Jefferson County. This allegation is sufficient to show the extent of the organization and power of this Association. The necessary result of the agreement in question is to prevent outsiders from securing contracts, to compel outsiders to become members of the Association, and to prevent the general public in awarding contracts from having the benefit of the competition of non-members of the Association.

It is not a sufficient answer to say that this Association has adopted the code promulgated by the President under the N. R. A., for under the N. R. A. all contractors in Jefferson County were by operation of law brought under the code provisions and for that reason the code did not operate to destroy competition as it does here where some contractors, members of the Association, operate under the code and others, non-members, do not operate thereunder. Nor does the fact that no evil tendencies have yet developed from this objectionable feature of the agreement operate to prevent the courts from declaring such objectionable feature to be unenforceable. The validity of a contract or agreement of this character is to be determined by its general tendency at the time it is made, and if this is opposed to the interests of the public it will be invalid even though the intention was good and no injury to the public has resulted. The test is the evil tendency of the contract and not its actual injury to the public in a particular instance. State v. First Bank of Nickerson, 114 Neb. 423, 207 N. W. 674, 45 A. L. R. 1418; William J. Burns International Detective Agency v. Doyle, 46 Nev. 91, 208 P. 427, 26 A. L. R. 600; 13 C. J. 424; 6 R. C. L. 707.

It is true that each member of this Association had

a perfect legal right not to bid on any contract, to withdraw a bid made on any contract and to confine his bids to such projects as he desired. This is an inherent right which no one is authorized to dispute and no court empowered to control or curtail. However, it does not follow from this freedom of individual members and contractors that they may lawfully enter into a general and unlimited agreement such as was entered into here, that they will bid only in competition with fellow members and will not bid in competition with any person who is not a member of the Association. Individual right is radically different from combined action. A combination and agreement of this kind has hurtful powers and influences not possessed by the individual, restrains trade, restricts and tends to destroy competition and seeks the advancement of members of the Association at the risk of injury to the general public.

We are therefore of the opinion that the provision of the agreement in controversy here has a tendency unreasonably to restrict competition and is therefore unenforceable and the Association has no power to assess a fine against a member for a violation thereof.

The judgment is therefore reversed for further proceedings consistent with this opinion.

The Whole Court sitting.