# Kenton & Campbell Benev. Burial Ass'n et al. v. Goodpaster, Director of Insurance, et al.

December 13, 1946.

Ray L. Murphy, Judge.

234

J. Lyter Donaldson, Barbour & Bassman and Louis E. Arnold for appellants.

Eldon S. Dummit, Attorney General, Elmer Drake, Assistant Attorney General, Rogers & Rogers, G. Sam Milam, J. Lee Moore, Smith & Leary and Wm. J. Wise for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing in part, affirming in part.

The constitutionality of Chapter 144 of the Acts of 1944, now Ky. Rev. Stats. 303.121 et seq., relating to contracts or policies of burial associations, is the question before us.

In 1906 the General Assembly declared burial associations to be engaged in the business of life insurance on the cooperative or assessment plan, and made them subject to limited and applicable provisions of the laws governing insurance. Acts of 1906, Chapter 143. See Newport Benevolent Burial Association v. Clay, Insurance Commissioner, and Kenton & Campbell Benevolent Burial Association v. Same, 170 Ky. 633, 186 S. W. 658. The statute has been amended from time to time. KRS 303.010, et seq.

An Act of 1932, among other things, prohibited the payment of benefits by a burial association in merchandise or services, and required that they be paid in money. Ch. 33. We held the act, when applied prospectively, to be constitutional as serving the purpose of protecting the members of the association and assuring them a respectable burial as contracted. For. Kenton & Campbell Benevolent Burial Association v. Quinn, 244 Ky. 260, 50 S. W. 2d 554. We declared as a sufficient compliance with the statute a proposed contract or policy which called for payment in money and guaranteed that the benefits would not be used for any other purpose, and with that object in view authorized the member, or after

his death his representative, to select any one of nine undertakers named in the certificate as having been bonded to perform the contract.

In 1938, Ch. 150, the Legislature enacted an amendment prohibiting contracts which provided for the payment of benefits to official or designated undertakers or which would prevent the decedent's representative from procuring burial supplies and services in the open market. Suit was brought against the Kenton & Campbell Benevolent Burial Association by an independent undertaker who rendered the service. We adhered to the views expressed in the Quinn opinion, and held the 1938 Act not applicable, or rather as not authorizing the relief the plaintiff sought. Swindler v. Kenton & Campbell Benevolent Burial Association, 275 Ky. 666, 122 S. W. 2d 506. The constitutionality of the 1938 Act was squarely presented later, and in Goodpaster v. Kenton & Campbell Benevolent Burial Association, 279 Ky. 92, 129 S. W. 2d 1033, it was held to be unconstitutional as arbitrary legislation and an unreasonable restriction on a lawful business. We concluded that the Act destroyed the one distinguishing characteristic of a burial association, which is that it guarantees a respectable burial, and made of the association a mere industrial insurance company. We thought that the real intent and purpose of the Act was "to deal a death blow to all burial associations." In the course of the opinion, in response to the argument that the Act was justified as the regulation of a monopoly and prohibiting contracts constituting restraint of trade, we observed that we were not impressed with the view expressed in Robbins v. Hennessey, 86 Ohio St. 181, 99 N. E. 319, in sustaining a statute prohibiting burial associations from limiting the payment of benefits to a single designated undertaker, that the general assembly of that state considered such contracts to be in restraint of trade and therefore against public policy. We added (279 Ky. 92, 129 S. W. 2d 1036):

"Had this been the actuating motive it seems patent that the legislature would have approached the question from an entirely different angle. The monopoly feature could be easily met, for example, by the simple process of requiring that undertakers who gave the required security and agreement should thereby become entitled

to status as 'official undertakers.' Thus any possibility of unreasonable restraint of trade as between undertakers would be eliminated.''

The sponsors of the 1938 Act seized upon that statement and secured the passage of the Act of 1944, which is now before us.

There are four new and important provisions of the Act, which we closely abridge. (1) It authorizes any licensed undertaker who desires to perform the provisions of a policy issued by a burial association to its members to qualify by filing a bond with the Commissioner of Insurance for the faithful performance of those contracts, and declares it to be unlawful for any future policy to provide for payment of its benefits or proceeds to any designated or particular undertaker or person, or any group of undertakers or persons. (2) It then authorizes any undertaker who had so qualified to render the services assured by the policy upon request of a representative of a deceased member and to be entitled to receive the benefits or proceeds thereof. (3) It prohibits the transfer or assignment of such policy or the benefits thereof. (4) After those provisions, the Act continues:

''It is hereby declared to be the public policy of the Commonwealth of Kentucky that the designation of particular undertakers or undertaking concerns or groups of particular undertakers or undertaking concerns by contracts of burial insurance constitutes unreasonable restraint of trade between undertakers and is contrary to the public policy of the Commonwealth.''

The appellant instituted this suit against the State Director of Insurance and two members of the Association, as representative of all, seeking a judicial declaration that the Act is unconstitutional and praying appropriate injunctive relief. It is alleged that the plaintiff is a mutual benefit association or company without capital stock, and that its entire assets are vested in its members or certificate holders; it makes no division of profits, pays no dividends; pays no salaries to its officers, and incurs expenses only in the solicitation of members and the collection of dues. It is stated that on May 1, 1944, it had 50,883 members, practically all of whom lived in Kenton and Campbell Counties, and assets of the value of $1,064,498.40, and no current liabilities. The

amount payable for funeral expenses of an adult member is $150. The weekly dues or premiums are graduated, according to the age of the member, from five cents to thirty cents. There are other allegations of statistical facts. The form of the certificate of membership appears in a note to Goodpaster v. Kenton & Campbell Benevolent Burial Association, 279 Ky. 92, 129 S. W. 2d 1033. Other facts relating to the Association, its organization and plan of operation are to be found in that and other opinions cited.

The two members, by answer, confessed the allegations of the petition and joined in its prayer. The Director of Insurance joined issue and by cross petition brought in eight undertakers doing business in the area, none of whom was designated as an official undertaker of the Association. We refer to them as independent undertakers. They severally responded, averring that they had executed the bond required by the Act of 1944, and bringing into the case nine undertakers who were designated as "official association undertakers" in the certificates of membership. The pleading of the independent undertakers is vigorous, extensive and comprehensive. They charged the Association and its official undertakers with creating and maintaining an illegal conspiracy and monopoly in restraint of trade; sought, among other relief, to have the relationship dissolved; all certificates issued since the effective date of the Act containing the list of official undertakers declared void; others issued in lieu thereof in conformity with the provisions of the Act; and that the Association be required to conform therewith in its future operations. They further pleaded a right to recover for funerals furnished to deceased members of the Association.

Demurrers to the pleadings of the Director of Insurance and these intervenors being overruled, the Association and official undertakers declined to plead further. It was adjudged that the allegations in their pleadings be taken as confessed for the purpose of this action. The Act of 1944 was held constitutional and the Association was adjudged to be violating it by issuing certificates not conforming therewith. An appropriate injunction was ordered. It was further declared that the independent undertakers were entitled to be paid by the Association the amounts specified in its certificates upon

proof of services rendered. These are the main provisions of the judgment.

The Association, its two members, and the official undertakers appeal.

The question for the court to decide, as always in constitutional matters, is one of power and not of purpose or wisdom or expediency. Basically, the argument of validity of the Act is the power and right of the State to regulate an insurance corporation and its contracts, and the argument of invalidity is the constitutional right of the Association and its members to contract with whomsoever they please without legislative interference. A reconciliation of these apparently conflicting legislative powers or rights is necessary to a solution of the question.

Recognition of the power of the State to regulate the business of insurance cannot be permitted to obscure our Bill of Rights, which proclaims as inherent and inalienable, ''The right of acquiring and protecting property,'' and that ''Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.'' Ky. Const., Secs. 1 and 2. The right to engage in any business or occupation and make contracts in reference thereto is embraced within the protection of the Constitution. Underhill v. Murphy, 117 Ky. 640, 78 S. W. 482, 111 Am. St. Rep. 262, 4 Ann. Cas. 780; Lawton v. Stewart Dry Goods Co., 197 Ky. 394, 247 S. W. 14; 26 A. L. R. 686; Rawles v. Jenkins, 212 Ky. 287, 279 S. W. 350; 11 Am. Jur., Constitutional Law, Sec. 339. Of course, the right is not absolute and is subject always to abridgement or restraint according to public welfare and policy. Such contracts are outside the constitutional guardianship. Mansbach Scrap Iron Co. v. City of Ashland, 235 Ky. 265, 30 S. W. 2d 968; Moore v. Northern Kentucky Independent Food Dealers Ass'n, 286 Ky. 24, 149 S. W. 2d 755.

Because of the public interest an insurance company and its policyholders do not have the inviolate rights which characterize private contracts. Under its police power and as the creator of the corporation, or its permission to do domestic business, as the case may be, the State may prescribe the terms and conditions on which

an insurance company may do business. It is competent for the legislature, within constitutional and reasonable limitations, to regulate its operations to prevent wrongs or injustice and to safeguard the general public and the policyholders. If public welfare and necessity justifies any particular regulation or restrictive law, the right of contract is subordinated and yields to the public good. But the interference and exercise of these regulatory powers must always be related to the interest of public necessity and not the private gain for any person. The law must be measured by reason according to a justifiable objective. If it goes beyond the reasonable and legitimate interest of the State and its citizens it must be deemed unjust, arbitrary and improperly discriminatory; hence, to run up against constitutional rights. Hartford Live Stock Ins. Co. v. Gibson, 256 Ky. 338, 76 S. W. 2d 17; 44 C. J. S., Insurance, sec. 56, at page 520; Springfield Fire & Marine Ins. Co. v. Holmes, D. C., 32 F. Supp. 964; Carpenter v. Pacific Mut. Life Ins. Co., 10 Cal. 2d 307; 74 P. 2d 761.

A certificate issued by a burial association contracting to furnish the holder with burial or the equivalent of paying a stated sum to undertakers for that purpose is a valid insurance contract of a particular character. Kenton & Campbell Benevolent Burial Association v. Quinn, supra, 244 Ky. 260, 50 S. W. 2d 554; 20 Am. Jur., Insurance, Sec. 8; Notes, 63 A. L. R. 723; 68 A. L. R., 1525; 100 A. L. R., 1453; 119 A. L. R., 1243.

Is the Act of 1944 which prohibits a burial association and its members from agreeing upon any one or more named undertakers, bonded for the faithful performance of the contract, in the interest of the public good? There is no law prohibiting prearrangement for one's funeral under any other condition. There is no law prescribing to whom shall be paid or not paid funeral benefits of fraternal benevolent associations or under the Workmen's Compensation statute. Nor indeed the payment of any kind of insurance indemnity. We claim no perfection or sureness in reasoning, but after careful study and resolving all doubts we perceive no reasonable necessity or rational basis for saying that the Act is protective of the members of the Association in denying their right to agree in advance upon a list of undertakers, to one of whom should be paid the money for the

services, and in requiring that it shall be paid to any undertaker anywhere who will agree with the person having charge of the member's body to put it away in its final resting place. This legislation is not in the interest of the burial association, or the direct beneficiaries, who may be regarded as being the members or persons who would otherwise have to pay their funeral expenses. It is in the interest of third persons who, when chosen after the obligation has matured, become third party beneficiaries in that they profit by the business. This is revealed by the statement in the Act that the designation of undertakers, "constitutes unreasonable restraint of trade *between undertakers.*" (Emphasis added) It has no relation to the protection of the members, for there is always assurance that the purpose of their contract shall be fulfilled. It does not regulate the affairs or operation of a burial association with a view to security or fairness. It merely prohibits the naming of those with whom the members or their representatives may do business. It seems to us clear that the Legislature has undertaken to interfere with private rights,— to interfere in the competition which exists in the undertaking business. The Act prevents freedom of contract in the interest of private gain. We are not able to perceive any reasonable design or basis for the denial of this right of contract. It would be just as legitimate to make it a violation of law for any insurance company to select the bank or banks it prefers to do business with and to require that every insurance company must place its deposits in any and all banks who make application for them.

We think, however, that the provision of the Act which requires the filing of a bond with the Insurance Department of the State by undertakers who may be named or designated, and prohibiting the assignment of the policies or their benefits are valid, as they are protective of the policyholders and the association as well. We cannot escape the conclusion that other than those provisions the Act goes beyond the reasonable and legitimate interests of the public and of the policyholders. It must be deemed as an unjustifiable interference with the constitutional right of contract and to be an attempt to exercise arbitrary power, which is understood to be any act which does not accord with reason and which

has no adequate determining principle. A legislative act must bear something more than a remote or fanciful relation to the realities. If that were not so, there might be discrimination and oppression without measure. Lawton v. Stewart Dry Goods Co., 197 Ky. 394, 247 S. W. 14, 26 A. L. R. 686; Goodpaster v. Kenton & Campbell Benevolent Ass'n., supra; City of Jackson v. Murray-Reed-Slone & Co., 297 Ky. 1, 178 S. W. 2d 847; Ware v. Ammon, 212 Ky. 152, 278 S. W. 593; Mugler v. Kansas, 123 U. S. 623, 661, 8 S. Ct. 273, 31 L. Ed. 205; City of Louisville v. Kuhn, 284 Ky. 684, 145 S. W. 2d 851.

When we survey the field of precedents for decisions on the constitutional validity of burial associations or policies, it is found to be limited. As pointed out in Note 68 A. L. R. 1525, generally the validity has been assumed in the cases relating to construction of such contracts. The business is regarded as being attended with possibilities of fraud and imposition, and some of the contracts have been criticized. In State of Montana v. Gateway Mortuaries, 87 Mont. 225, 287 P. 156, 68 A. L. R., 1512, it was held by a divided court that a statute declaring invalid contracts made before death for the performance of personal funeral services, except those made in contemplation of imminent death, and providing penalties for the violation thereof, was unreasonable and arbitrary, interfered with the freedom of contract and was, therefore, unconstitutional. In Robbins v. Hennessey, 86 Ohio St. 181, 99 N. E. 319, to which we have already referred, it seems that the certificate of membership named only a single undertaker who could perform the service, and when the member had died another undertaker was employed and the contract assigned to him. He claimed the benefit, which was only $34. The Association paid the money into court and the litigation was between the two undertakers for the recovery of the money. The validity of the assignment was involved since it ran counter to a statute providing that no association should provide for the payment of benefits to any official undertaker so as to deprive a representative of a deceased policyholder from obtaining the services of another in the open market, with the advantage of competition. The court held that the member had accepted the policy subject to the provisions of the statute, and might

not do that which the Association itself could not do or effect the same result. In declaring the statute valid, the court said that the General Assembly had considered the contracts to be in restraint of trade and, therefore, against public policy, and sought to prevent the making of all such contracts. We have already observed that we were not impressed with the statement that the legislative body had so considered them. Goodpaster v. Kenton & Campbell Benevolent Burial Association, supra, 279 Ky. 92, 129 S. W. 2d 1033. It may be pointed out that the Act of our General Assembly attacked herein is more restrictive than the Ohio Act, for it does not permit any number of undertakers to be designated from which a choice might be made. The Ohio Act seems to have prohibited the naming of only one certain undertaker, as had been done in the certificate involved in that case. We need not express an opinion as to whether or not the prohibition of such a limitation would be valid.

The material difference between this 1944 Act and that of 1938, held to be arbitrary and unconstitutional legislation in the former Goodpaster Case, supra, 279 Ky. 92, 129 S. W. 2d 1033, is that the 1938 Act required that all names of undertakers be omitted from the insurance certificates, while this Act requires that the broad statement be made that any undertaker who has made the bond prescribed might be chosen. We see little difference in principle and think both are without constitutional justification.

So much for the consideration of the Act and its terms other than the declaration quoted above, that to designate particular undertakers in burial association policies is "unreasonable restraint of trade between undertakers and is contrary to the public policy of the commonwealth." First, we may say that reference in our first Goodpaster case, supra, concerning "the monopoly feature" of legislation must be read with the purpose of its expression in mind, namely, to answer an argument. We pointed out that the Legislature had not approached the question from that angle or undertaken to justify its act on the theory of a monopoly, as in the Ohio Case. The illustration which seems to have been taken as a prejudgment was but the suggestion that if that theory had been in the mind of the Legislature, it

might have set up something of the sort. The statement is pure dictum and may not be taken as an anticipatory decision or a prejudgment.

This court has over and over again recognized that the power of the General Assembly to declare public policy is superior to the judicial. But that appreciation is always qualified by the recognition that the Legislature's powers in that respect are limited by the constitution, and that the court is the repository of responsibility for construing those limitations. Another accepted judicial power is that the courts may determine whether legislative action is in accord with the realities and the nature of things. Lawton v. Stewart Dry Goods Company, supra. If it does not conform, then it is an attempt to exercise absolute and arbitrary power, which, as our Constitution declares, does not exist in our form of government. Calling this kind of a contract relationship a monopoly or in restraint of trade does not make it so. As one of our brethren has expressed it, "The Legislature cannot make a buzzard a bull by merely saying it is." Here the Legislature has declared that stating in a burial insurance certificate or policy a list of undertakers from which one shall be given the business by a member or his representative is a contract between undertakers and constitutes "unreasonable restraint of trade" between them. To be illegal, the restraint of trade must be inimical to the public interest. It is not merely trade or commercial advantage which one person or group of persons may be able to secure over others. As said in 36 Am. Jur., Monopolies, Sec. 2, the term restraint of trade is used with reference to the suppression of competition and is not a monopoly, although in many instances it is an instrument of monopoly. As we held in Love v. Kozy Theatre Company, 193 Ky. 336, 236 S. W. 243, 245, 26 A. L. R., 364, "The word 'monopoly' as now used and understood embraces any combination the tendency of which is to prevent competition in the broad and general sense, or to control prices to the detriment of the public." This plan of insurance does not prevent such competition. There is no fixing of prices to the detriment of the public in these contracts, for the price is that fixed by the policy which evidences the agreement of the Association and its members. Just as in any

other insurance contract, the amount of benefits is stipulated. The further agreement is that any one of the designated undertakers may render the service of that reasonable worth. If he does not, there is a breach of contract. This cannot be any conspiracy or combination between the undertakers. In the case at bar the conflict is between nine designated and eight undesignated undertakers of the community who have not been able to obtain the business. It is substantially a conflict between two groups of equal numerical strength as to which shall receive the business. It may be assumed that these seventeen include all undertakers located in the area in which the Association has its membership.

Coming to the specific charges made against the Association and the designated undertakers, which is a cause of action quite separate from that invoking the statute, we revert to the pleadings of the independent undertakers. The most material allegations are closely summarized. The Association was organized in 1911 by eleven undertakers for the purpose of soliciting, obtaining and controlling the undertaking business in Kenton and Campbell Counties and vicinity, and establishing prices therefor. They and their successors have constituted its Board of Directors and officers and have completely controlled and managed its every activity. Six of the nine directors are the designated undertakers or their representatives. They completely dominate and control the Association and do so for their own selfish purposes. By reason and in furtherance of an illegal conspiracy, through which they formed and have managed the Association, its members or certificate holders, and their representatives upon their decease, have been deprived of their rights and privileges to select undertakers of their own choice for their burial. As a further result the cross-defendants are the only undertakers to which the Association pays the benefits and they have at all times fixed and controlled the prices charged by themselves. It is alleged that the prices have been and are now higher than the fair and reasonable value of the merchandise and services furnished. They have charged the families of the deceased members exorbitant and unreasonable prices in excess of the amounts paid by the Association to them, which sums they have credited on the bills and required payment of the balance. It is

charged that the requirement in the membership certificates that one of the designated undertakers shall be chosen has eliminated competition in their favor and created a monopoly. The cross-defendants are charged with advertising and soliciting business for themselves. It is stated that since its incorporation the Association has collected dues of nearly $4,000,000, and paid benefits of about $1,800,000. These facts are to be read with those stated in the petition, given in the early part of this opinion.

This branch of the case is to be determined under the principles of the common law as we have no anti-trust or anti-monopoly statutes in Kentucky. Gay v. Brent, 166 Ky. 833, 179 S. W. 1051; Jackson v. Sullivan, 276 Ky. 666, 124 S. W. 2d 1019, 121 A. L. R., 341.

It is significant that the Director of Insurance does not join in this branch of the case. It is significant also that none of the nearly 51,000 members of the Association is making complaint. It appears that the two members who are made parties and who have supported the Association and its contracts are too friendly and intimately associated with the management to be regarded as representatives of all the members. So, as already indicated, we have a contest between the two groups of undertakers.

After all is said, it seems to be a matter of giving business by the Association and getting business by one group to the exclusion of the other. The fact that those who give the business are directors of the Association does not render the relationship iniquitous or unlawful, obviously. We suppose the right to change the directors and their control is in the membership just as in any other mutual or cooperative insurance company. It is not of concern to outsiders. We are of opinion that the allegations of fact do not describe an illegal monopoly or transcend a legitimate course of competitive business according to the law, which we have already discussed in connection with the statement contained in the legislative act. See also Union Labor Hospital Ass'n v. Vance Redwood Lumber Company, 158 Cal. 551, 112 P. 886, 33 L. R. A., N. S., 1034. Indeed, this branch of the case was settled by our decision in the Quinn Case, supra, 244 Ky. 260, 50 S. W. 2d 554, that the certificates

since issued by this Association are valid, safeguard the purpose of the guarantee of a respectable burial and prevent the proceeds from being diverted to another use. Also, that they afford the members or, after their death, their representatives "a field of choice sufficiently broad to render it unobjectionable under the Act." The court should have sustained the demurrer to this pleading.

The Act of 1944 contains a statement that its provisions shall be deemed severable and if any of them shall be held unconstitutional the remaining provisions shall not be thereby impaired, the legislative intent being to adopt them had not the unconstitutional provisions been included in the Act. The first part of the Act requiring the benefits to be paid in money, now KRS 303.121, is the re-enactment in different language of a part of the Act of 1932, now KRS 303.120. We have already expressed the view that the provisions requiring the filing of bond with the Director of Insurance, now 303.122, and making the certificates of membership or policy or any part of the benefits nonassignable, KRS 303.123(2) are constitutional. These three sections continue in effect. The other parts of the Act are not constitutional and, therefore, are void.

The judgment is reversed in part and affirmed in part.