VENTERS, J., CONCURRING IN RESULT ONLY: I concur in the result reached by the Majority opinion, but I disagree with its reasoning. KRS 441.025(1) cannot answer the question before this Court because it was drafted and enacted by the legislature to perform an entirely different function. Wringing that statute to squeeze out an answer to the question before us is like shaking an apple tree hoping that a peach will fall out. It may be, as the Majority laments, the only statute we have; but it will never produce the fruit we need to resolve this dispute. ■ Like the clever image that simultaneously appears to be the silhouette of a vase or the silhouettes of two faces, KRS 441.025 when applied to this controversy is perfectly ambiguous; a riddle without a solution. However, when applied to its intended purpose, the statute performs perfectly well, and its meaning is perfectly clear and unambiguous. I respectfully suggest that KRS 441.025(1) is simply inapplicable to the present controversy. We are loath to say that we have no law that governs this issue, but I find it preferable to accept the reality of that unappealing choice than to infuse that statute with meaning never put there by the legislature. As its title portends, KRS 441.025 simply places the fiscal responsibility for incarcerating local prisoners — those who have either been arrested in the county or committed to jail by a court in the county — on the county government rather than upon local municipalities or upon the state government. Each subsection of KRS 441.025 is devoted to that purpose, and that purpose is entirely consistent with the remaining provisions of KRS Chapter 441. KRS 441.025(1) reads as follows: “The fiscal court of each county shall provide for the incarceration of prisoners arrested in the county or sentenced or held by order of the courts in the county.” A less concise but grammatically equivalent restatement of the statute would read as follows: The fiscal court 'of each county' shall provide for the incarceration of prisoners who have either been 1) arrested in the county or 2) sentenced or held by order of the courts in the county. Plainly stated, county government (“the fiscal court”) bears the fiscal responsibility for the incarceration of a person 1) arrested in that county; or 2) sentenced or held pursuant to the order of a court in that county. The prisoners that are the subject of the pending controversy fit equally within either category. They were arrested in - counties served by the Big Sandy Regional Jail; and they were sentenced or held by orders of a court in Fayette County.- KRS 441,025 does not differentiate or prioritize the fiscal responsibility for incarceration in either circumstance, I see nothing in the language or grammatical structure -of the statute that favors the county of arrest over the county of the court order, or vice versa. - The statute cannot resolve the conflict we face because it was not written to allocate the responsibility of incarceration between competing counties; if only establishes that county governments, rather than cities or the state, must bear that burden. Consequently, I would adhere to the general rule that in the absence of applicable statutes, common law principles are controlling. See Kenton & Campbell Benev. Burial Ass’n v. Goodpaster, 304 Ky. 233, 200 S.W.2d 120, 127 (1946). Insofar as I can determine, there is no common law cause of action for a Kentucky county (or a regional entity standing in its place) housing a prisoner to recover its expenses from another county. I would therefore dismiss the claim of Big Sandy, leaving it holding the bag until the legislature fills the statutory gap with a solution of its choosing. Accordingly, I would affirm, as does the Majority opinion, albeit upon different grounds. VanMetet, J., joins.