## Newport Benevolent Burial Association v. Clay, Insurance Commissioner.

## Kenton & Campbell Benevolent Burial Association v. Same.

(Decided June 7, 1916.)

### Appeals from Franklin Circuit Court.

1.   Statutes—Construction—Legislative Intent.—The prime purpose, in the construction of statutes, is to ascertain the legislative intent, and when such intent is ascertained, it must be enforced by the courts.

2.   Statutes—Construction—Legislative Intent.—The intent of the legislature must be ascertained from the statute alone, unless the language is of doubtful meaning, or where a strict adherence to the language would result in an absurdity, or injustice, or in contradictory provisions.

3.   Statutes—Construction—Legislative Intent.—If the legislative intent is plain, and is expressed in plain and unambiguous language, it is not necessary to call to the aid of the construction of the statute any extraneous matter.

4.   Statutes—Construction—Legislative Intent.—The common and accepted doctrine is, that the operation of a proviso in a statute is usually confined to the provision or clause immediately preceding the proviso, and it will be so applied, unless in effecting the legis-

lative intent, it is necessary to apply its operation to other sec-
tions or clauses of the statute, or to the entire statute.

5. Statutes—Construction.—Where the provisions of two statutes are
not repugnant to each other, although dealing to some extent with
the same subject matter, and can be enforced consistently with
the provisions of each, it is the duty of the court to enforce the
provisions of each.

JOHN BYRNE, BARBOUR & BASSMAN and BYRNE & READ
for appellants.

M. M. LOGAN, Attorney General; C. H. MORRIS, Assistant Attor-
ney General, and G. E. ZIMMERMAN for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing in
each case.

These actions involve the same questions and hence
will be heard together. Each of the appellants filed a
petition in equity in the Franklin circuit court against
the Insurance Commissioner of Kentucky, and each al-
leged that it was a corporation which had been organ-
ized under the laws of the state of Kentucky, and par-
ticularly under the provisions of the act of the general
assembly, which became a law on the 24th day of March,
1906, and which is entitled, "An act to regulate burial
associations, corporations and companies doing business
in the state of Kentucky," as amended by an act, which
became a law on the 27th day of March, 1908, and which
act as amended now constitutes section 199a of the Ken-
tucky statutes and its subsections. Each further alleged
that it had fully complied with the provisions of the law
relating to its incorporation and the conduct of its busi-
ness since its incorporation. Each, further, alleged that
it was now engaged in the business of insuring and guar-
anteeing the burial expenses of persons, and that it was
a corporation which did not have any capital stock, nor
paid any salaries or commissions to its officers, and that
all of its resources, except necessary expenses, are de-
voted to paying funeral expenses of its members, but
that the appellee, as Insurance Commissioner of the
state of Kentucky, was threatening to revoke its li-
cense, unless it should organize under and comply with
the provisions of subdivision 3, article 4, chapter 32,
Kentucky Statutes, which is composed of and embraces
sections 660 to 681a, inclusive, of Kentucky Statutes,
and prayed that the commissioner be enjoined from re-

voking its license and from prohibiting it from doing the business of insuring or guaranteeing burial expenses for persons in this state.

A general demurrer was sustained to each of the petitions and the petitions dismissed, and hence this appeal.

Subdivision 3, article 4, chapter 32, of the Kentucky Statutes, embraces the statute laws which control and regulate corporations, associations, and individuals, which engage in the business of life and casualty insurance upon the assessment and co-operative plan. Section 664, of the above named subdivision, article and chapter, defines the corporations, associations and societies, which are deemed under that statute to be engaged in life insurance upon the assessment or co-operative plan, as follows:

"Any corporation, association or society which issues any certificate, policy, or other evidence of interest to, or makes any promise or agreement with its members, whereby, upon the decease of a member, any money or other benefit, charity, relief or aid is to be paid, provided or rendered by such corporation, association or society to the legal representative of such member or to the beneficiary designated by such member, which money, benefit, charity, relief or aid is derived from the voluntary donation, or from admission fees, dues and assessments, or any of them collected or to be collected from the members thereof or members of a class therein, and interests and accretions thereon, or rebates from amounts payable to the beneficiaries or heirs, and wherein the paying, providing or rendering of such money, or other benefit, charity, relief or aid is conditional upon the same being realized in the manner aforesaid, and wherein the money or other benefit, charity, relief or aid so realized is applied to the uses and purposes of such corporation, association or society, and the expenses of the management and prosecution of its business, shall be deemed to be engaged in the business of life insurance upon the co-operative or assessment plan, and shall be subject only to the provisions of this subdivision." * * *

Section 665, of the same subdivision, article and chapter, and in substance the same language as 664, supra, defines the corporations, associations and companies, which shall be deemed to be engaged in casualty

insurance upon the assessment or co-operative plan, when the promise or agreement is to pay the benefit, charity or relief upon the sickness or physical disability of a member, when not from having attained a certain age.

Without adverting to the various provisions of subdivision 3, article 4, chapter 32, *supra,* relating to casualty or life insurance upon the assessment or co-operative plan, it is required of every association, corporatior or company undertaking to do business under that subdivision, article and chapter, to effect its organization by first having at least two hundred persons, who have subscribed in writing, to be insured therein in an aggregate amount of at least $200,000.00, and to have each paid in five per centum of the amount of the insurance subscribed for by them, in cash, to be invested in securities, in which insurance companies are allowed by law to invest their capital, and deposited with the Treasurer of the state in trust for the beneficiaries. Also, it is required to provide an emergency fund consisting of two per centum of the fees and dues collected and the investment of this in securities as a trust fund for the payment of death and disability claims; that, after the filing of satisfactory proof of the death of any policyholder, whose claim is not disputed on account of fraud or want of validity, and the emergency fund is not sufficient to pay the claim, unless the officers levy an assessment to provide for it within sixty days, that they become personally liable to the beneficiary of the policy or certificate; that on or before the first day of March, of each year, it shall file with the Commissioner of Insurance a report of its affairs and its operations during the year ending on the 31st day of December, immediately preceding.

By an amendment to this subdivision, article, and chapter, a company engaged in doing life and casualty insurance business or both upon the co-operative or as· sessment plan, before beginning business is required to have a guarantee fund of $100,000.00, which shall be invested in securities and deposited with the Treasurer of the Commonwealth, to be held in trust for the benefit and protection of the members or policyholders of such corporation. The many other provisions of subdivision 3, article 4, chapter 32, *supra,* are not necessary to be adverted to.

While the definition of life insurance companies, as defined by section 664, *supra,* is sufficiently broad to include burial associations, corporations and companies and individuals engaged in the business of insuring and guaranteeing burial or burial expenses of persons holding certificates, bonds, or policies therein, it is evident by the enactment of the act of March 24th, 1906, and which composes section 199a and its subsections, of the Kentucky Statutes, that it was the intention of the legislature to place the corporations, associations and companies or individuals engaged in the business of insuring or guaranteeing burial or burial expenses of persons, into a class to be governed and controlled by regulations, other than those which apply to the other companies engaged in life insurance, as defined by section 664, *supra.* Section 664, *supra,* was, on the 24th day of March, 1906, amended by the addition to it of its last clause and re-enacted, and at the same session of the legislature, and as it appears upon the same day of the session, the act to regulate burial associations, which is entitled: "An act to regulate burial associations, corporations or companies doing business in the state of Kentucky," also became a law. Hence, the purpose and intention of the legislature to separate the class of insurance companies, which are commonly called burial associations and the business of which was to insure and guarantee burial or burial expenses for its members, from the operation of the requirements and regulations pertaining to other life insurance companies, as defined by section 664, *supra,* and to provide a different system and regulation for the associations, corporations, companies and individuals, which do the business of simply guaranteeing burial expenses to its members. The act entitled, "An act to regulate burial associations, corporations and companies doing business in the state of Kentucky," and which became a law March 24th, 1906, and which is section 199a and its subsections as originally enacted, consisted of seven sections. The first section provided, in substance, that every corporation, association, company, or individual known as burial corporations, associations or companies, engaged in this state in the business of insuring or guaranteeing burial or burial expenses of persons holding certificates, bonds, guarantees or policies therein, shall incorporate as required by law and file its articles in the office of the

Insurance Commissioner, which, after having been examined by the Attorney General and approved by him as conforming to the requirements of the law, he shall so certify, and thereupon the Insurance Commissioner shall grant a license to the corporation or association to engage in business. It will be observed that this statute does not require any particular number of subscribers for insurance, nor does it require any amount of insurance to be subscribed for before organization, nor as is provided for the organization of other life insurance companies. Section 2, of the act as originally enacted, required the companies which engaged in the business of insuring or guaranteeing burial expenses of its members, to deposit with the Treasurer of the state double the amount of the maximum certificates issued by such corporation, association or company, and that such funds should be invested in securities, in which insurance companies are allowed by law to invest their capital, and that such securities should be placed in trust with the Treasurer of the Commonwealth, and that in addition thereto, the corporation, association or company should execute bond, payable to the Commonwealth of Kentucky, with good and sufficient sureties, in the sum of $3,000.00, and that such bond should be for the benefit of any policyholder or any other person that might have a claim against the association or corporation. The remainder of the section applied to what should occur in the event of the corporation, company or association ceasing to do business. Section 3 of the act required the corporation, association or company to file a power of attorney with the Insurance Commissioner, designating him as the proper person upon whom process might be served for it. Section 4 provided for the license tax which the corporation, association, or company should be required to pay annually, and the fees to be paid by it for its organization. Section 5 provided for the reports, which the corporation, association, or company should make to the Insurance Commissioner of its affairs and operation and when the report should be made and what it should contain, and authorized the commissioner to make such examination of the books and affairs of the corporation, association or company as is now permitted by law to the Insurance Commissioner in the examination of insurance companies in

the state. Section 6 provided the penalties for the failure of such corporation, association or company for engaging or continuing in business without a compliance with the provisions of the law, and, also, provided, that if, upon the examination of the affairs of the corporation by the Insurance Commissioner or any person designated by him to make an examination, it should appear, that its liabilities exceed its resources, and that it could not in a reasonable time, not more than three months after the date of the original default, pay its accrued indebtedness in full, the commissioner should report such facts to the Attorney General, who should make application for an order to close the business of the corporation and the appointment of a receiver for a distribution of its assets among its creditors. Section 7 provided that all policies, certificates or bonds issued by such burial corporation, association, or company to any person, and which contained any reference to the application of insured and the constitution or by-laws or other rules of the corporation, either as forming a part of the policy or contract between the parties thereto or having any bearing on the contract, should have attached to the policy of insurance a correct copy of the application, as signed by the applicant, and the constitution, by-laws or rules referred to, and unless so attached or embraced in the policy, the application, constitution, by-laws and rules should not be received in evidence in any controversy between the parties to the policy or certificate and should not be considered a part of the policy or contract between the parties.

It is very evident that the legislature, by the enactment of this law, intended to provide and did provide a system of regulation and control applying to burial corporations, other and different from what was intended to apply to other insurance companies doing business in the state of Kentucky.

Thereafter, on the 27th day of March, 1908, an act of the general assembly went into effect, the title of which was as follows:

"An act to amend section 2, of an act entitled, 'An act to regulate burial associations, corporations and companies doing business in the state of Kentucky,' which became a law March 24th, 1906, without the approval of the Governor."

The enacting clause and the first section of the amendatory act, are as follows: "Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Section 1. That section 2 of an act entitled, 'An act to regulate burial associations, corporations and companies doing business in the state of Kentucky,' be amended so as to read." Section 2, as amended, requires the corporations, associations, companies or individuals, who are described and doing business as set out in section 1 of the original act, to deposit with the Treasurer of the Commonwealth, double the amount of the aggregate face value of the policies, bonds or certificates issued by such corporations, associations, companies or individuals, and that such funds shall be invested in such securities as insurance companies are allowed by law to invest their capital in, which shall be deposited in trust with the Treasurer of the state. The remainder of the section as amended relates to the proceedings which shall take place for the dissolution of the corporation, and the application of its assets to the payment of its indebtedness and its distribution in the event of its discontinuance in business, or when a judgment against it shall remain unsatisfied for sixty days. It also provides a penalty to be incurred by such corporation or company, which shall fail to comply with the provisions of the act. This amendatory act, also, contains, at its end, the following proviso:

"Provided, however, that the provisions of this act shall not apply to corporations, associations or companies that have no capital stock, that pay no salaries or commissions to officers, and whose sole resources, except necessary expenses, are devoted to paying funeral expenses of its members."

The contention upon this appeal is whether the proviso embraced in the amendatory act of March 27th, 1908, applies to the second section of the act relating to burial corporations or associations only; or whether it applies to and qualifies all of the sections of the burial association act. In other words, it is contended for the appellee, that the proviso relates to and qualifies all the sections of the act and for that reason, that corporations, companies or associations, which are engaged in the business of insuring or guaranteeing burial expenses of its members, and which have no capital stock, pay no salaries nor commissions to its officers, and whose sole resources, except

necessary expenses, are devoted to paying funeral expenses of its members, are entirely excluded from the operation of the act relating to burial corporations and associations, and for that reason are subject to the regulations prescribed for life insurance companies, upon the assessment or co-operative plan, in subdivision 3, article 4, chapter 32, *supra;* while the appellants contend that the proviso, *supra,* relates to and affects only the second clause of the act relating to burial corporations or associations, and that they as such are subject to the provisions of the act of March 24th, 1906, as amended by the act of March 27th, 1908, alone.

If the contention of the appellee is sound, it means that corporations, associations and companies, who are engaged in the business of insuring or guaranteeing burial or burial expenses for persons, and which corporations, associations or companies have capital stock and pay salaries or commissions to their officers, and whose resources, except necessary expenses, are not devoted solely to the payment of the funeral expenses of its members, may organize and conduct their business under the provisions of section 199a and its subsections, of Kentucky Statutes, which we will call the burial association statute, but a corporation or company or association engaged in the business of insuring or guaranteeing burial or burial expenses of its members, and which has no capital stock and pays neither salaries nor commissions to its officers, and devotes its entire resources, except necessary expenses, to the payment of the funeral expenses of its members, is excluded and not entitled to the benefits nor subject to the pains of the burial association statute, but must, if it exists, do so under the conditions and in compliance with the laws regulating and controlling the organization and conduct of life insurance companies, upon the assessment or co-operative plan as provided in subdivision 3, article 4, chapter 32, *supra.*

The portion of section 664, *supra,* in which the legislative intent was declared as to what should be deemed life insurance upon the co-operative or assessment plan, was enacted previous to 1906, but was amended by the latter clause of the section, and which does not affect the point of contention here, at the legislative session of 1906, and as amended was re-enacted. The fact, that at the same legislative session and upon the same day, the burial association act was enacted, renders it conclusive,

that it was the legislative purpose and intention to place the insurers of burial or burial expenses for persons, into a class to themselves, and to prescribe regulations for their organization and operation and control, which should apply to them as a class and that they should no longer be controlled by the provisions of the general laws provided for the operation and control of other corporations and associations and companies engaged in life insurance upon the co-operative or assessment plan. While it is not the province of the court to inquire into the legislative intentions, except to determine what the intention was, it is apparent that there was good reasons for not requiring of burial associations the same requirements as are made of life insurance societies, upon the assessment or co-operative plan, since the amounts for which the insurance is carried in burial associations by any one individual is ordinarily small, in comparison to the amounts involved in the operation of other life insurance companies.

The prime purpose in the construction of all statutes is to determine what the legislative intent, in enacting a statute or an amendment, was. Grigsby v. Lexington & E. Ry. Co., 152 Ky. 164; City of Covington v. Cincinnati G. & R. Ry. Co., 144 Ky. 646; Grinstead v. Kirby, 110 S. W. 247. It will be observed that the statutes relating to life insurance upon the assessment and co-operative plan, being the sections embraced in subdivision 3, article IV., chapter 32, Kentucky statutes, and the statutes relating to burial corporations or associations, and embraced in section 199a and its subsections, are not repugnant to each other, although they deal to some extent with matters pertaining to the same subject matter, and being capable of enforcement consistently with the provisions of each, it becomes the duty of the court to uphold and to enforce the provisions of each. Brown v. Miller, 4 J. J. M. 474; 36 Cyc. 1077; Willson v. Haken, 131 Ky. 444; Nazareth L. & B. Inst. v. Commonwealth, 14 B. M. 266; Lambert, etc. v. Board of Trustees of Public Library, 151 Ky. 725. As heretofore stated, the general assembly, by the enactment of the burial association act, declared its purpose to place corporations, companies, associations and individuals, who engage in the business of guaranteeing or insuring burial and burial expenses for persons into a class and to prescribe rules for their organization and the conduct of their

business different from the regulations which it intended should apply to the organization and regulation of other life insurance companies or corporations upon the assessment or co-operative plan. After the burial corporations and associations had been regulated by the statutes expressly relating to them, being section 199a and its subsections, *supra,* for two years, the amendatory act of March 27th, 1908, was adopted, which created a new section, instead of section 2, of the original act. This amendment relieved all corporations, associations and companies in the business of insuring burial or burial expenses from the necessity of executing the bond with sureties, which was required by section 2, of the original act, but still imposed upon them the necessity of depositing with the treasurer twice the face value of all policies, bonds, and certificates issued by them to their members, for the protection of the holders of such policies, bonds and certificates. The proviso, which composed a part of the amendment, also, excepted from the operation of the amendatory act, such associations, corporations and companies as were engaged in insuring or guaranteeing burial or funeral expenses for persons, and which did not have any capital stock, and did not pay to its officers any salaries and commissions, and applied all their resources, except necessary expenses, to paying the funeral expenses of the members. If the proviso is held to qualify, only, the requirements of section 2, of the burial association act, it has the effect of dividing the burial corporations, associations and companies into two classes, the ones which have capital stock and which pay salaries and commissions to their officers, and do not use all of their resources, except necessary expenses, in paying the burial expenses of their members, constitute one class, and are subject to all the requirements of the burial association act, while those which have no capital stock, and do not pay any salaries or commissions to their officers, and use all their resources in paying the burial expenses of their members, constitute another class, and are subject to all the requirements of the burial association statute, except those embraced in section 2 of the statute. This is not an unnatural division, and whether wisely or unwisely done by the legislature, is a matter with which we have nothing to do, as long as the legislative purpose and intent is plain. Beyond dispute, it was the purpose

of the legislature to divide the burial associations into
the two classes above named.     Section 460 Kentucky
statutes, says with reference to the construction of stat-
utes, that "all words and phrases shall be construed
and understood according to the common and approved
usage of language," except technical words and phrases,
and such as have acquired a peculiar and appropriate
meaning.  The intention of the legislature is the inten-
tion as expressed in the statute.     Brown v. Kaufman,
131 Ky. 642; Com. v. International Harvester Co., 131
Ky. 551.  It is only where the language is of doubtful
meaning or where an adherence to the letter of it would
lead to absurdity, injustice or to contradictory pro-
visions that a search must be made for the true meaning
by the courts.  36 Cyc. 1107.  The general assembly de-
clared its intent and purpose, in express words, when
enacting the amendatory act of March 27th, 1908, which
contains the proviso, the effect of which is in question.
The title of the amendatory act expressed the purpose
to amend section 2, of the burial association act.  The
first clause of the amendatory act declares again, that
the purpose of its enactment is to amend section 2, of
the burial association act.  The amendatory act left un-
molested the first clause of the burial association stat-
ute, which is expressly made applicable to all corpora-
tions, associations and companies engaged in guaran-
teeing or insuring burial and burial expenses.  There
does not appear any intention or purpose to exclude the
burial corporations, associations and companies, men-
tioned in the proviso, from the regulations prescribed
for burial corporations and associations by the pro-
visions of the burial association act.     The legislature
limited the effect of the proviso to its qualification of
the requirements of section 2, as amended, and when the
legislative authority, in express and unambiguous lan-
guage, declared its purpose and intent, the courts are
not authorized to place a different construction upon it.
It is insisted that the language of the proviso is, "that
the provisions of this act, etc.," has reference to the
act to which the amendatory act is an amendment, but
reading the proviso, in connection with the title and
first clause of the amendatory act, shows beyond cavil
that the words "this act" in the proviso refers to the
act then being enacted—the amendatory act.  This is in
accordance with the "common and approved usage of

language.'' The common and accepted doctrine is, that the operation of a proviso is usually confined to the clause or provision immediately preceding it, and it will be so applied, unless in effecting the legislative intent, it is necessary to apply it to the other provisions of the act or to the entire act. 36 Cyc. 1163. The ordinary office of a proviso is to conditionally defeat the operation of an enacting clause. If it was designed to except such corporations, as the appellants, from the operation of the burial association act, entirely, it would more appropriately have been done by an excepting clause in the first section of the act, where were described the corporations and associations to which the act should apply. For the reasons above stated, we have concluded that the proviso in the amendatory act of March 27th, 1908, only affects the operation of the provisions of that act, and does not except such corporations as the appellants from the requirements of the burial association act, as an entirety and does not exclude them from its operation, except to the extent of the requirements of section 2 of the act.

Hence, the judgments in each of the cases is reversed, and the causes remanded for proceedings which are consistent with this opinion.