834 S.W.2d 657 (1992)
STATE BOARD FOR ELEMENTARY AND SECONDARY EDUCATION and Commonwealth of Kentucky, Appellants,
v.
Raymond HOWARD, Bettie Weyler and Terry Williams, Appellees.
The LEGISLATIVE RESEARCH COMMISSION, Appellant.
v.
Raymond HOWARD, Bettie Weyler and Terry Williams, Appellees.
Nos. 91-SC-606-TG, 91-SC-643-TG.
Supreme Court of Kentucky.
June 4, 1992.
*659 Chris Gorman, Atty. Gen., Robert V. Bullock, Ann M. Sheadel, D. Brent Irvin, Asst. Attys. Gen., and Charles J. Cronan, IV, Judith A. Villines, and Mark R. Overstreet, Stites and Harbison, Frankfort, for appellants.
*660 John Frith Stewart and Dennis Franklin Janes, Segal, Isenberg, Sales, Stewart & Cutler, Louisville, for appellees.
WINTERSHEIMER, Justice.
This appeal is from a summary judgment in a declaratory judgment action. The appeal arises from a constitutional challenge by public school employees to K.R.S. 161.164 and 161.990 which prohibit their involvement in political campaigns for the election of members of local boards of education. The school board employees were successful in the circuit court and the State Board of Elementary and Secondary Education and Commonwealth of Kentucky and the Legislative Research Commission appealed from the summary judgment declaring the statutes to be unconstitutional and enjoining the enforcement of them.
Initially, the circuit court entered a temporary restraining order prohibiting the State Board of Elementary and Secondary Education and other related Boards from enforcing the statute. Subsequently, the circuit court certified Howard, Weyler and Williams as a class consisting of local school district employees in the Commonwealth of Kentucky who have taken part or wish to take part in the management or activities of any political campaign for school board. Thereafter the Legislative Research Commission, by and through Senator John A. Rose and Representative Donald J. Blandford, in their representative capacities as co-chairmen of the LRC, was granted leave to intervene.
Raymond Howard resides in Jefferson County but is employed by the Board of Education of Bullitt County. Bettie Weyler and Terry Williams reside in Bullitt County and are employed by the Board of Education of Bullitt County.
Howard, Weyler and Williams allege that prior to July 13, 1990, the effective date of the Kentucky Education Reform Act, they and members of their families were actively engaged in political campaigns for the Boards of Education for the school districts in which they reside and in which they are employed. The stipulated facts provide that they and their families contributed money and services to school board candidates and campaign committees; made independent expenditures relating to school board election campaigns; contributed money and services to political action committees for school board campaigns; expressed their views both publicly and privately regarding school board elections and cast votes in the school board elections. Howard, Weyler and Williams claim that K.R.S. 161.164(1), 161.164(2), 161.990(1) and 161.990(2) prohibit them from engaging in activities such as these and are therefore unconstitutional.
K.R.S. 161.164(1) prohibits employees of local school districts from taking part in the "management or activities of any political campaign for school board." K.R.S. 161.164(2) forbids school board candidates from soliciting or accepting "any political assessment, subscription, contribution or service of any employee of the school district." K.R.S. 161.990(1) and (2) establish penalties for the violation of K.R.S. 161.164. The employees allege that these statutes are unconstitutional because they deprive them of their right of free speech, free association, free assembly, equal protection of the law, substantive due process and procedural due process. The circuit court entered an injunction prohibiting the enforcement of the statutes and determined that the statutes were unconstitutional. This appeal followed.
Both the State Board of Education and the LRC appeal the judgment of the circuit court urging that this Court declare the statutes valid and enforceable and vacate the injunction barring their enforcement. The State Board of Education argues that the statutes are essential to Kentucky Education Reform so that the state school system will operate in a constitutionally efficient manner required by the Kentucky Constitution as construed by this Court. They assert that similar statutes have been upheld by the U.S. Supreme Court and other states when challenged for vagueness and overbreadth.
The LRC contends that these statutes are narrowly drawn to serve a compelling state interest, and that they are not susceptible *661 to arbitrary enforcement. They claim they are intelligible and unambiguous and neither vague nor overbroad and must be upheld. The LRC also argues that pursuant to K.R.S. 446.090, there is an opportunity to sever any possible unconstitutional parts of the statutes.
This Court, in Rose v. Council for Better Education, Ky., 790 S.W.2d 186 (1989), determined that Section 183 of the Kentucky Constitution placed a duty on the General Assembly to establish an efficient common school system free from political influence. The statutes in question were enacted by the General Assembly in an effort to comply with this Court's directive. Our task is to determine whether the statutes are valid or whether they are vague or overbroad.
It is beyond question that the challenged statutes invade areas of constitutionally protected conduct, from contributing to political races to becoming actively involved and managing campaigns of such candidates and even to voting. Under the circumstances, a reviewing court must consider whether such statutes are narrowly tailored to serve a compelling state interest. Government has the right to prohibit state employees from active participation in politics provided that the limitation is expressed in terms that an ordinary person exercising common sense can sufficiently understand and comply with. City of Louisville v. Fitzgerald, Ky., 600 S.W.2d 456 (1978). This Court has previously noted that among the most fundamental of constitutional rights is the right of citizens to involve themselves in the electoral process. Commonwealth v. Foley, Ky., 798 S.W.2d 947 (1990). As we consider this matter, the crucial element is the balancing of compelling state interests against the interests of citizens in participating in the political process. Foley, supra. The critical question is whether the legislature in restricting the political expression of school employees has unnecessarily infringed on the constitutional rights of the employees.
The threat of dismissal from public employment is a powerful means of inhibiting free speech. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). No statute may unnecessarily chill the exercise of the rights guaranteed constitutional protection. A statute is unconstitutionally overbroad if it needlessly prohibits constitutionally protected activities or may be enforced in an arbitrary manner. Foley.
Historically, statutes such as those enacted by the Kentucky legislature and challenged in this case are not new. Since the inception of this nation, persons concerned with insuring effective governmental service free from undue political influence, have had to consider the necessary tension between the right of free political expression and the legitimate concern of government service. The United States Supreme Court has on several occasions, upheld state laws which limit the participation of government employees in political activities. The seminal case in this area is ex parte Curtis, 106 U.S. 371, 1 S.Ct. 381, 27 L.Ed. 232 (1882). Originally the early cases related to political involvement of federal government employees. United States v. Wurzback, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1930); United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). One of the leading cases in construing the Hatch Act, 5 U.S.C. § 7324(a)(2), which limited participation by federal employees in election matters was United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). The U.S. Supreme Court reaffirmed the earlier principles and held that neither the First Amendment nor any other provision of the Constitution invalidates a law barring certain kinds of partisan political conduct by federal employees. Contemporaneous with Letter Carriers, supra, the United States Supreme Court rendered Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), which addressed the restrictions of the State of Oklahoma on political activities of its employees.
Here, the employees first argue that the restrictions placed on their political speech and association are unconstitutionally overbroad and vague. The controlling Kentucky *662 decision in this regard is Foley which examined the constitutionality of K.R.S. 119.205, a statute that imposed criminal penalties on those who received anything of value for the purpose of procuring or influencing a vote.
A statute is vague if "men of common intelligence must necessarily guess at its meaning." Broadrick, supra. In Kentucky the test has been expressed as "whether a person disposed to obey the law could determine with reasonable certainty whether contemplated conduct would amount to a violation." Foley.
In reviewing the standard for vagueness, this Court and the United States Supreme Court have followed two general principles underlying the concept of vagueness. First, a statute is impermissibly vague if it does not place someone to whom it applies on actual notice as to what conduct is prohibited; and second, a statute is impermissibly vague if it is written in a manner that encourages arbitrary and discriminatory enforcement. Cf. Musselman v. Commonwealth, Ky., 705 S.W.2d 476 (1986).
In addition this Court has explained in Foley under what circumstance a specific statute is overly broad and consequently invalid. Essentially a statute is overbroad if in an effort to control impermissible conduct, the statute also prohibits conduct which is constitutionally permissible. See Commonwealth v. Ashcraft, Ky.App., 691 S.W.2d 229 (1985); Musselman, supra.
When a legitimate state interest conflicts with an equally legitimate right by a citizen to exercise his First Amendment rights, the reviewing court must engage in a balancing test in which the rights of the individual are weighed against the requirements of the total society represented by government. Cf. Pickering, supra. Foley noted that the state interest must be a compelling one and that the restriction operate without unnecessarily circumscribing protected expression. The Kentucky standard for determining whether a statute involving a state interest impermissibly infringes on a free speech right requires two initial determinations. First, whether there is a compelling state interest, and second, whether the statute is as narrowly drawn as possible. Foley also admonished that in examining a statute for vagueness and overbreadth, where a statute is intelligible on its face, the court should not supply words in order to make it constitutional.
The State Board of Education and the LRC take different approaches to the question of what is to be prohibited in K.R.S. 161.164(1). The State Board concedes that voting and private and even public speech are not restricted by the statute in question. The LRC takes a stricter view, indicating that all forms of political influence must be prohibited by the statute. The LRC views would forbid the expression of public and private speech in such detail as would include the use of bumper stickers and yard signs.
This Court considers the word "activities" to be vague. Clearly the State Board and the LRC cannot agree as to what is actually proscribed. Consequently, how could any person of common intelligence disposed to obey the law reasonably ascertain what conduct would amount to a violation?
Certainly, Raymond Howard, who lives in Jefferson County but is employed by the Bullitt County Board of Education has a perfect right to participate in a political campaign in Jefferson County for school board. If K.R.S. 161.164 is taken literally, it could be interpreted as to deprive Howard of the rights enjoyed by other Jefferson County residents and parents whose children attend Jefferson County public schools. It is ludicrous to assert that Howard's political activities in Jefferson County could have a corrupting political influence on the efficient conduct of the Bullitt County schools.
Webster's New 20th Century Dictionary, unabridged, 2nd Ed. (1977) defines "activity" as the quality or state of being active; vigorous or energetic action; natural or normal function; an active force; and a pursuit in which a person is active.
The use of the word "activities" is vague, ambiguous and far too general. *663 The expression of personal opinion is not a campaign activity. The expression of an opinion through the use of a bumper sticker or a yard sign may not constitute a vigorous or energetic action, but such a conclusion is reached only after a painful and extended legal and mental process. It is difficult to determine when an expression of personal opinion becomes too vigorous and thereby becomes a forbidden political activity. An ordinary lay person who incorrectly concludes what his or her rights are, may be subject to criminal prosecution if he or she is a school employee. The evaluation of a statute in terms of vagueness requires a close examination of the specificity of the statutory limitation. Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). We do not believe that a person of ordinary intelligence can identify the conduct prohibited under the word "activities" in K.R.S. 161.164(1). We also hold that the word "activities" is not facially intelligible or clear.
Pursuant to the standards enunciated in Foley, K.R.S. 161.164(1) is unconstitutionally vague because it does not give school employees a fair notice of the standard of conduct to which they are to be held accountable. The criteria established by the words of the statute are so vague and ambiguous that the enforcing authority is vested with too much discretion. Consequently, many school employees would suffer a chilling effect on political expression of all kinds. Cf. Hobbs v. Thompson, 448 F.2d 456 at 471 (5th Cir.1971).
The Attorney General concedes that the statutes do not prohibit the expression of personal opinion or voting. He also concedes that the school employees could use bumper stickers or yard signs to extend their political expression and that school employees can take part in the campaign in another district. The Commonwealth also agrees that the statute does not restrict the political activities of a member of the school board's school employees' family. Further the Attorney General agrees that a school employee could contribute money to a political action committee that in turn makes contributions to school board candidates unless the political action committee is composed of school board employees. We do not believe that these exceptions are so obvious that they are readily understood by a person of common intelligence. The LRC on the other hand disagrees with the Attorney General's interpretation of the statute and approaches it in a much stricter manner.
In regard to the word "management" we again must turn to the dictionary for a definition, and the definition provided by Webster is the act of participating in the managing; and the directing or supervising of something. The word "management" does not fail the Foley test because it does give school employees a fair notice of the standard of conduct to which they will be held accountable. While there certainly may be some confusion over what constitutes a political activity, a person exercising ordinary common sense can discern the difference between a political activity, such as placing a sign in the yard, and managing or directing a school board candidate's campaign.
We must next come to the question of whether K.R.S. 161.164 is overbroad. The landmark federal case on this question is United States Civil Service Com'n v. National Association of Letter Carriers, supra, which dealt with a challenge to the constitutionality of the Hatch Act, 5 U.S.C. § 7324(a)(2). The statute prevented federal employees from taking "an active part in political management or in a political campaign." The specific definition of prohibited activities was left to an implementing regulation and administrative rulings of the Federal Civil Service Commission. Consequently, the apparent overbreadth of a statute can be avoided by a limiting regulation or interpretation. No such administrative avenue for relief is provided for in this Kentucky statute.
In upholding the constitutionality of Oklahoma's statutory equivalent to the Hatch Act against a challenge of vagueness, the United States Supreme Court adopted the limiting construction of the Oklahoma Attorney General and the state personnel board and noted that the Oklahoma *664 statute allowed a public employee to apply to the personnel board for an advisory opinion on the permissibility of anticipated political activities. Broadrick, supra. The Kentucky statute does not provide for a similar administrative interpretation.
Broadrick holds that a determination of the extent to which government can go without interfering with constitutional guarantees must be determined on a case-by-case basis and an analysis of the fact situation. Rose, supra, did not authorize or require the legislature to unconstitutionally restrict the constitutional rights of school district employees. This Court clarified the constitutional standards by which the efficiency of the public school are to be measured. The Court specifically determined that the means by which the standards are to be met must be determined by the General Assembly. There is no basis for the bald assertion that the statutes in question were necessary to comply with Rose. Rose did not require the enactment of any specific legislation. The validity of the statutes must be analyzed on the same constitutional grounds that govern any other legislative act.
Rose held that in order to meet the requirements of Section 183 of the Kentucky Constitution, the school system must be properly managed. In order to satisfy this requirement the common schools shall be monitored by the General Assembly to assure that they are operated with no waste, no duplication, no mismanagement and no political influence. In an effort to avoid corrupting political influence, the General Assembly enacted the statutes here questioned.
In its zeal to cleanse public education of political patronage or influence, the General Assembly exceeded the bounds necessary and infringed on constitutionally protected rights of citizens when it employed the term "activities." In our view, the statutes in question can be reconciled and harmonized with the Kentucky Constitution so as to preserve the validity of the statutes as to the remaining language.
The circuit court committed reversible error in not considering or applying K.R.S. 446.090 in order to sever unconstitutional portions of the statutes.
The four sections of the statutes which are under challenge relate to two different groups: 1) employees of school districts, and 2) candidates for local school boards. K.R.S. 161.164(1) relates to the conduct of school district employees by prohibiting them from taking part in the management or activities of any political campaign for school board. If an employee violates that section, he or she becomes subject to the penalty of K.R.S. 161.990(1) which would be ineligibility for employment in the school system for five years. The employee, if found guilty, would be charged with a Class A misdemeanor.
K.R.S. 161.164(2) applies only to school board members. It prohibits them from soliciting or accepting any political assessment, subscription, contribution or service of any employee of the school district. Anyone violating this section of the statute if found guilty of the Class A misdemeanor would be disqualified from service on the school board within the state. The circuit court improperly assumed without comment that the sections of the statute which were being challenged were inherently and inseparably connected and dependent. The circuit court's decision related only to the limitations and penalties placed on school district employees. There is no mention of any unconstitutional effect of the statute on the activities of candidates for school board. The two sections of the statute are not inseparably connected or wholly intertwined. It is entirely possible to prohibit a candidate for the board from soliciting or accepting money or services of a school employee and not to prohibit the school district employee from participating in the activities of a campaign. It is also possible to prohibit a candidate from soliciting but not from accepting money or services. Consequently, in applying the constitutionality of the statutes in question, the separable parties should be considered separately.
We must also now consider whether K.R.S. 161.164(2) which applies to *665 school board candidates and their solicitation or acceptance of any political assessment fails the vagueness test. We believe it is clear.
K.R.S. 161.164(2) clearly puts a school board candidate on notice that he or she is not to solicit school district employees for either money or services. The statute gives fair and plain notice to those to whom it applies and is not subject to arbitrary enforcement.
K.R.S. 161.164(2) is not overly broad. The state has a legitimate compelling interest in regulating the conduct of school board candidates in connection with their ability to receive money and services from school district employees. There is a real and present danger in any system where those who have the overall responsibility for the administration of the schools can attain their position in large part because of solicitations from those who work for the system. Political neutrality for school employees is a sound element in any efficient system of education. Cf. Ex parte Curtis.
We do not believe that the statutes in question are unconstitutional special legislation nor do they violate Section 1 of the Kentucky Constitution. The plaintiffs had standing to challenge the constitutionality of the sections in question.
Removal of the word "activities" from the statute could be readily accomplished by the legislature. The General Assembly is free to enact that section of the statute which is more precise and does not infringe on legitimate political rights.
The Court must consider each item which comes before it in an impartial and totally fair manner, balancing competing rights, regardless of well-intentioned goals. We do not believe the elimination of the word "activities" from the statute significantly impedes educational reform.
The judgment of the circuit court is reversed insofar as it holds that all provisions of K.R.S. 161.164(1), K.R.S. 161.164(2), K.R.S. 161.990(1) and K.R.S. 161.990(2) are unconstitutional. This Court finds that the word "activities" is deemed to be unnecessarily and facially broad and vague and must be stricken from the statutes. The remaining portions of the statutes are constitutional. The order enjoining the enforcement of the balance of the statute is overruled.
LAMBERT, LEIBSON and REYNOLDS, JJ., concur.
SPAIN, J., files a separate opinion concurring in part and dissenting in part in which STEPHENS, C.J., and COMBS, J., concur.
STEPHENS, C.J., files a separate dissenting opinion, in which COMBS and SPAIN, JJ., join.
COMBS, J., files a separate opinion concurring in part, dissenting in part, in which STEPHENS, C.J., and SPAIN, J., join.
Justice SPAIN, concurring in part and dissenting in part.
With all due respect, I dissent from so much of the Majority Opinion as finds any portion of the statutes in question to be unconstitutional. I find that the words employed by the General Assembly are neither vague nor overbroad and do sufficiently apprise school employees of the conduct proscribed. Persons of common intelligence, in my opinion, will not find ambiguous the direction that "political activity" is prohibited and that they are not to "take part in the management or activities of any political campaign for school board."
No legislature could or should draft a statute which contains an itemized "laundry list" of every conceivable act which it seeks to prohibit. The Majority Opinion cites Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), wherein the United States Supreme Court upheld an Oklahoma statute restricting the political activities of state employees. After examining this "Little Hatch Act," the Supreme Court answered the vagueness argument by observing that it had "little doubt that § 818 [the Oklahoma statute in question] is . . . not so vague that `men of common intelligence must necessarily *666 guess at its meaning.'" Id. at 608, 93 S.Ct. at 2913. It stated further that "[w]ords inevitably contain germs of uncertainty and, . . ., there may be disputes over the meaning of . . ." various words and phrases. However, the Court opined that it was "all but frivolous to suggest that the section fails to give adequate warning of what activities it proscribes or fails to set out `explicit standards' for those who must apply it." Id. at 608, 93 S.Ct. at 2913.
Furthermore in Broadrick, the U.S. Supreme Court took note of interpretations given the Oklahoma statute both by the State Personnel Board and by the Oklahoma Attorney General in determining the breadth of the statute. Kentucky's statute, on the other hand, was hardly permitted to become effective on Friday, July 13, 1990, before the Franklin Circuit Court entered a restraining order on the following Wednesday, July 18, prohibiting its enforcement. Thus there was never an opportunity for appellants or the Kentucky Department of Education to adopt implementing administrative regulations or for our Attorney General to issue advisory opinions concerning the breadth of our statutes. Were the statutes permitted to stand as written, however, there would be ample opportunity for them to be "fleshed out" through these means on a case-by-case basis, just as was done in Oklahoma.
I am persuaded that appellees are not really so concerned that the statutory language here might be vague, as they are adamant that they may be required to surrender some of their perceived constitutionally protected rights to participate in school board politics as in the past. It is clear, however, that the Kentucky General Assembly has both the power and authority under the Kentucky and U.S. Constitutions to restrict the political activity of school employees in school board elections if necessary to remove corruptive political influence and to promote the efficiency and integrity of the public school system. United States Civil Service Commission v. National Association of Letter Carriers, AFL-CIO, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); Rose v. Council for Better Education, Ky., 790 S.W.2d 186 (1989); and Fowler v. Obier, 224 Ky. 742, 7 S.W.2d 219, 223 (1928).
While the reluctance of the trial judge and the Majority of this Court to uphold statutes restricting free speech and association rights of school employees is understandable, in my opinion, the compelling interest of the entire citizenry of Kentucky in an efficient public school system, free of political influence, is entitled to even greater consideration. I appreciate the fact that my brethren of the Majority have not completely struck down this entire legislation, and I can only trust that they have not rendered it ineffectual by invalidating the key provision regarding prohibited political activity.
STEPHENS, C.J., and COMBS, J., concur in this opinion.
STEPHENS, Chief Justice, dissenting.
I respectfully differ with the opinion of the majority and join the dissent by Justice Spain, but I would also add the following:
This Court in Rose v. Council for Better Education, Ky., 790 S.W.2d 186 (1989) set out nine "essential, and minimal, characteristics of an `efficient' system of common schools" under Section 183 of the Kentucky Constitution. Item number six specifically contained an admonition to keep politics out of the schools and said:

Common schools shall be monitored by the General Assembly to assure that they are operated with no waste, no duplication, no mismanagement, and with no political influence. (Emphasis added.) Id. at 213.
Precise words of the statutes in question are:
KRS 161.164 Political Activity prohibited. . . (1) No employee of the local school district shall take part in the management or activities of any political campaign for school board.
(2) No candidate for school board shall solicit or accept any political assessment, subscription, contribution, or service of any employee of the school district.
KRS 161.990. Penalties

*667 (1) Any person who violates any provisions of KRS 161.164 shall be guilty of a Class A misdemeanor. Any school board candidate or school board member who willfully violates any provision of KRS 161.164 shall also be disqualified from holding the office of school board member.
(2) Any teacher or employee of a district who willfully violates any provision of KRS 161.164 shall be ineligible for employment in the common schools for a period of five (5) years.
When the General Assembly enacted these statutes it followed the specific mandate we set out in Rose, supra. It is inconceivable to me that anyone could doubt the purposes and intentions of the statutes in question. It is likewise inconceivable to doubt the purpose or intention of our opinion in Rose, supra.
I have no difficulty in believing that any reasonable person would understand the proscriptions contained within these statutes. Commonwealth v. Foley, Ky., 798 S.W.2d 947 (1990).
Therefore I respectfully dissent with the majority and find KRS 161.164(1), (2) and KRS 161.990(1), (2) are constitutional.
COMBS and SPAIN, JJ., join this dissent.
COMBS, Justice, concurring in part/dissenting in part.
I join in the dissenting opinion by Chief Justice Stephens and Justice Spain's opinion, concurring in part and dissenting in part. I offer these additional comments.
The issue is most difficult, as it involves tension between rights of citizens as guaranteed by our federal constitution and Kentucky's Bill of Rights, and the mandate for an efficient school system  also a constitutional matter. In Rose we recognized that the General Assembly had failed to perform the mandate of Section 183 of our constitution. We noted that the failure had resulted in part from the political activities of board members, employees, and others who had crippled the educational system through nepotism and other abuses. The Education Reform Act sought to eradicate these evils.
I find the phrase "political activity" neither vague nor overbroad, and sufficient to apprise school employees of the proscribed conduct. It was these very activities which in the past produced the inefficiency addressed by this Court in Rose, supra. The General Assembly cannot provide for an efficient system of education unless it can prohibit such practices. By striking these words we begin an inevitable retreat to the "old ways" of corruption and unconstitutional inefficiency. We hamstring the legislature, and sound the death knell for education reform, still in infancy.
STEPHENS, C.J., and SPAIN, J., join in this dissent.