Rick E. WALKER, Appellant,

v.

KENTUCKY DEPARTMENT OF EDU-
CATION; Dr. Thomas C. Boysen, Com-
missioner; Livingston County Schools
Board of Education; Phillip Threlkeld,
Board Chairman; Anthony Lasher,
Board Vice–Chairman; Hazel Maupin,
Timmy J. Porter, Curtis Stafford, Mem-
bers; Lee Jones, Superintendent;. Ran-
dee Rudolph, Sherron Doom, Joyce M.
Croft, Karen Duncan, Patsy Greer, Kim-
berly Lampley, Holly Hayden, Mona
Carneal, Rozella Clemens, Arthur C.
Schofield, Juanita Walker, Penny Akers,
Glenda Dedmon, Martha Barrett, and
Robin Dickerson, Ledbetter Elementary
School Certified Staff Members; Shirley
Menendez, Ledbetter Elementary School
Principal; and Doralyn Lanier in Her
Official Capacity as Division Director
For Region One Service–Center, Ken-
tucky Department of Education and
State Board For Elementary and Sec-
ondary Education, Appellees.

No. 97–CA–0040–MR.

Court of Appeals of Kentucky.

March 27, 1998.

Discretionary Review
Denied by Supreme Court Nov. 12, 1998.

Donna Thornton–Green, Paducah, for Ap-
pellant.

A.B. Chandler, III, Attorney General, Rob-
ert V. Bullock, Assistant Attorney General,
Frankfort, for Appellees, Kentucky Depart-
ment of Education; Dr. Thomas C. Boysen,
Commissioner; Doralyn Lanier, In Her Offi-

cial Capacity; and State Board for Elementary and Secondary Education.

David L. Yewell, Owensboro, for Appellees, Livingston County Schools Board of Education; Phillip Threlkeld, Board Chairman; Anthony Lasher, Board Vice–Chairman; Hazel Maupin, Timmy J. Porter, Curtis Stafford, Members; Lee Jones, Superintendent; Randee Rudolph, Sherron Doom, Joyce M. Croft, Karen Duncan, Patsy Greer, Kimberly Lampley, Holly Hayden, Mona Carneal, Rozella Clemens, Arthur C. Schofield, Juanita Walker, Penny Akers, Glenda Dedmon, Martha Barrett, and Robin Dickerson, Ledbetter Elementary School Certified Staff Members; and Shirley Menendez, Ledbetter Elementary School Principal.

Before BUCKINGHAM, KNOPF and SCHRODER, JJ.

*OPINION*

SCHRODER, Judge.

 This appeal deals with the rewards program under the Kentucky Instructional Results Information System (KIRIS) of KRS 158.6455. The questions raised are: whether a person who was a certified staff member when a school earned a reward, but was no longer on staff when the reward was received by the school, is entitled to a portion of the reward; and whether KRS 158.6455 is unconstitutionally vague and ambiguous. We believe that the former certified staff member is entitled to his share of the reward and that the statute is not unconstitutionally vague.

Rick E. Walker (Walker) was the principal of Ledbetter Elementary School for the school years of 1992–1993 and 1993–1994. During this time, Ledbetter Elementary students performed so successfully on their KIRIS tests as to entitle the school to a monetary reward. In August 1994, Walker left to accept a position in Nashville, Tennessee, but there is no question that he was a certified staff member when the school achieved its success which led to the reward. He and the fifteen certified staff member appellees were listed as such on a January 25, 1995 verification report. However, when

the reward was received in 1995 and the current certified staff voted on how to spend the reward money, Walker was not notified of the vote. However, the new principal, Shirley Menendez, was allowed to vote. The fifteen certified staff members and Menendez[1] each received a portion of the reward money. Walker received nothing.

Walker petitioned for a declaratory judgment, which resulted in a judgment on behalf of the appellees. The court's determination was based upon its interpretation of KRS 158.6455, which provides in pertinent part:

It is the intent of the General Assembly that schools succeed with all students and receive the appropriate consequences in proportion to that success.

(1) The Kentucky Board of Education shall promulgate administrative regulations to establish a system of determining successful schools and dispensing appropriate rewards. The system shall be based on the following:

(a) A school shall be the unit of measure to determine success;

. . . .

(e) Rewards shall be given to the school on behalf of the full-time, part-time, and itinerant instructional staff of a school who generate the reward when the school achieves at least one percent (1%) gain over its threshold as defined in paragraph (d) of this subsection . . . ;

(f) Rewards shall be calculated by applying the percentage set by the General Assembly in the biennial budget to the current annual salary of each certified staff person employed in the school on the last working day of the year of the reward. . . . The staff person's identity in connection to his share of the reward shall be maintained when his share of the reward is deposited to the school's account;

(g) The certified staff members shall by majority rule collectively decide on the ways the reward funds shall be spent. Each individual staff person shall use the amount he earned in accordance with the decisions made by the total staff. Rewards shall not be added to a staff per-

---

1. Shirley Menendez chose to use her portion of. the reward as a scholarship for a fourth grader.

son's base salary and shall not be defined as compensation for retirement purposes under KRS 161.220(10); and

(h) The Department of Education shall send the school's reward to the local district office for transmittal to the school.

The court concluded that reward money is to be given to schools, not individuals, and that the instructional staff who generates the reward are to be given credit, not necessarily money, for generating the reward. The court believed that the people voting on the disbursement can elect to do anything with the money, from giving it to the janitor to taking a trip to Disneyworld. The court noted the practical difficulties in requiring certified staff members from the time of the reward's generation to vote, given the turnover of staff:

> It is not reasonable to believe that all "certified staff members" from the biennium or the school year in which the rewards were generated must be reconvened when the monies come in to determine the disbursement of the rewards. Common sense dictates otherwise, and common sense must not be a stranger in the house of the law.

> [T]he statute clearly gives total discretion for this potentially disruptive decision making back to "certified staff members" of the school at the time the money is received.

Furthermore, the circuit court was not impressed by appellant's argument that the statute is unconstitutionally vague:

> When reading the entire statute, it is clear that the legislature intended to place the burden of distribution of reward monies back on the school. It is equally clear that it placed that burden on the "certified staff members" on board at the time the money was received to make the disbursement.... The statutory scheme may be unwise, but not unconstitutional.

Walker argues to this Court that the legislative intent was to reward the certified staff members who actually helped generate the reward money. Appellees assert that it is the school, not the individual staff members, that receives rewards or sanctions under the

law. Individual staff members are used only to calculate the amount of the reward. Appellees emphasize that the State Board for Elementary and Secondary Education intended to fully leave the matter of how to distribute the reward money to the school through its certified staff at the time the reward is received by the school. We agree with appellant's argument.

█ If the statute required that the reward money be used for the school, we would accede to appellees' contention that the reward belongs to the school. But the statute does not so require. Moreover, a school is comprised of its faculty, principal, staff, and students. KIRIS success is generated by those people, through their combined efforts. It is only sensible, therefore, that the rewards for such success go only to the people who contributed to the success and resulting rewards. If appellees' interpretation were stretched to a possible, albeit unrealistic, extreme, an entire certified staff which generated rewards could be replaced after the biennium, and an entirely new certified staff could be employed in the year the reward is received. That staff could vote to give the money to themselves, and no one responsible for having generated the notable results would enjoy the fruits of that labor. This would be absurd. When at all possible, statutes are to be interpreted to attain reasonable results. *Newport Benevolent Burial Assn. v. Clay*, 170 Ky. 633, 186 S.W. 658 (1916).

The language in KRS 158.6455(1)(e), which provides that rewards shall be given "to the school on behalf of the ... staff of a school who generate the reward" also provides us with several clues. That the rewards are given or payable "to the school on behalf of the staff" evinces an intention to simplify the job of the dispenser of the reward. Instead of having to write 16 separate checks, the Department of Education issues only one to the local district office. KRS 158.6455(1)(h). Once the decision on how to disburse the reward funds is made, the money is distributed accordingly. KRS 158.6455(1)(g).

Subsection (e) also provides that the rewards are for the "staff of a school who generate the reward." Plainly, the rewards

are for the staff, not the school. We know this because the pronoun used in the restrictive relative clause, "who generate the reward," is "who," which refers to people, not things. "School" is an inanimate noun and would take the relative pronoun "that." Furthermore, the verb "generate" is plural in number, and must refer to the plural antecedent of "who." In this case, that can only be "staff," which, as a collective noun, can be either singular or plural. School, of course, is only singular. Because "staff" is used in the plural form, it indicates that each individual staff member is treated separately. Thus, rewards shall be given to each staff member who helped generate the reward.

Further support that the rewards are intended for the staff members who generated the rewards is found at subsection (f). It requires the use of each certified staff person's salary employed in the school on the last working day of the year of the reward in order to calculate the reward. It also states that each staff person's identity "in connection to *his share* of the reward" is to be maintained when "*his share*" is deposited in the school's account. (Emphasis added.) This language strongly suggests that each certified staff member employed on the last working day of the year of the reward is entitled to his/her share of the reward. We believe that Walker had a reasonable expectation that he would receive his portion of the reward funds once they arrived.[2]

Subsection (g) states that "each individual staff person shall use the amount *he earned*" according to the decision of the voting staff. (Emphasis added.) A staff member can only earn a part of the reward funds if he/she was on staff during the biennium in which the rewards were generated. Walker was on staff and, thus, earned his portion of the reward. Principal Shirley Menendez was not on staff and had no part in the generation of the reward.

■ Accordingly, we conclude that the legislature intended that only the certified staff members who helped generate the reward may receive a share of it. Certified staff members, like Principal Menendez who was on staff at the time the reward was received but not when it was earned, are not entitled to a portion of the reward. See KRS 446.080(1).

Walker also maintains that the statute is unconstitutionally vague and ambiguous as applied by appellees. He alleges that it does not place someone to whom it applies on notice of what conduct is prohibited. He urges that if people have to guess at its meaning, it encourages arbitrary and discriminatory enforcement. We disagree.

■ A statute is vague if people "of common intelligence must necessarily guess at its meaning." *State Board for Elementary and Secondary Education v. Howard*, Ky., 834 S.W.2d 657, 662 (1992) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). "A statute is impermissibly vague if it is written in a manner that encourages arbitrary and discriminatory enforcement." *Howard, supra* at 662. In examining a statute for vagueness, we "should not supply words in order to make it constitutional" if it is intelligible on its face. *Id.*

We reached our interpretation of the statute by construing its plain meaning in accordance with the legislative purpose of establishing rewards. Given this construction, arbitrary enforcement is not encouraged, and people of common intelligence need not guess at its meaning. The statute is not unconstitutionally vague.

For the aforesaid reasons, we affirm the Livingston Circuit Court's judgment in part, reverse in part, and remand for a judgment consistent with this opinion.

KNOPF, J., concurs.

BUCKINGHAM, J., dissents by separate opinion.

BUCKINGHAM, Judge, dissenting.

I respectfully dissent and agree with the trial court that the reward money goes to the

---

**2.** Walker is, of course, bound by the majority vote of how to disburse the funds. If the vote is to use all the money for school supplies, for example, he is entitled to nothing. But if certified staff members receive any of the reward, Walker is entitled to his proportionate share.

school and that the certified staff members when the reward is received decide how the money will be spent. Like the trial court, I am "not enamored with the statutory scheme dealing with the disbursement of reward money. It generates inequities." However, despite the fairness which results from the majority opinion, I must agree with the trial court's interpretation of the statute.